In re G. G. MOSS CO., INC., Debtor.

**MAREMONT MARKETING, INC., Plaintiff,**

**v.**

**Watson M. MARSHALL, Trustee in Bankruptcy of the Estate of G. G. Moss Co., Inc., Defendant.**

**Bankruptcy No. 79–01585. Adv. No. 80–0007.**

United States Bankruptcy Court, E. D. Virginia, Richmond Division.

Jan. 13, 1981.

48

Harry Shaia, Jr., T. J. Markow, Shaia, Stout & Markow, Richmond, Va., for plaintiff.

Watson M. Marshall, Richmond, Va., Trustee in Bankruptcy/defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing of a Complaint by Maremont Marketing, Inc. (Maremont), Plaintiff herein, to recover collateral in the possession of Watson M. Marshall, Trustee of the Estate of G. G. Moss Co., Inc. (Trustee), Defendant herein, which Maremont alleges it has a valid and enforceable security interest therein. The Trustee timely filed an Answer alleging, *inter alia*, that Maremont failed to properly perfect its security interest in the collateral. Pursuant to a Pretrial Order entered in this matter, Plaintiff and Defendant entered into Stipulations of Fact and submitted Proposed Findings of Fact and Conclusions of Law. A trial was held in the matter and briefs were requested and received by the Court. Upon the foregoing, the Court renders the following opinion.

## STATEMENT OF THE FACTS

The facts in the case are substantially undisputed and have been largely stipulated by the parties. Maremont is an Illinois corporation which is engaged in the business of selling automobile parts, products and accessories and which periodically sold its line of parts, accessories and equipment to the Debtor, G. G. Moss Co., Inc. (G. G. Moss). As of the date of filing of the Petition in Bankruptcy G. G. Moss was in default of its obligation to Maremont in the amount of $233,776.04, plus interest, $85,693.57 of which is evidenced by a promissory note, and the balance of said indebtedness being on open account. As of the date of the filing of the Petition in Bankruptcy, G. G. Moss was in possession of parts, accessories and equipment purchased by it from Maremont valued in the amount of $29,500. To secure the credit extended for these purchases, the parties entered into a written Security Agreement dated December 5, 1973. The Security Agreement included as collateral:

" ... Customer's entire inventory of Gabriel Shock Absorbers, Ride Control Products and component parts, and all acces-

sory parts thereto purchased heretofore and from time to time hereafter by the Customer from Maremont and all the products and proceeds therefrom including notes and accounts receivable (Collateral) to secure the payment of the Customer's indebtedness ..."

In an effort to perfect its security interest, Maremont filed a financing statement with the State Corporation Commission of Virginia (S.C.C.) and in the Circuit Court for the County of Henrico on or about December 21, 1973. At that time, G. G. Moss had its sole place of business located at 1901 Sledd Street in the City of Richmond, Virginia. Maremont has conceded that the filing of the financing statement at the office of the S.C.C. and the County of Henrico did not act to perfect the security interest in that § 8.9–401 of the Code of Virginia (1950), as amended, required a filing at the S.C.C. and the Circuit Court of the City of Richmond, Division I.

Subsequent to the filings in 1973, G. G. Moss began a second business at 2210 Llewellyn Avenue in the City of Norfolk, Virginia. By agreement of August 16, 1976, the Security agreement was amended to include the inventory at the Norfolk office as additional collateral:

> "Customer's entire inventory of exhaust system products, parts, and accessories located at the above address [1901 Sledd Street, Richmond, Virginia] and at 2210 Llewellan Avenue, Norfolk, Virginia 23508."

On August 19, 1976, Maremont filed an amendment to the financing statement with the S.C.C. claiming a lien on: "Additional Collateral: Customer's entire inventory of exhaust system products, parts and accessories located at the above address [1901 Sledd Street, Richmond, Virginia] and at 2210 Llewellyn Avenue, Norfolk, Virginia 23508." The amendment to the financing statement contained the names of the Debtor and secured party, was signed by the Debtor and the secured party, gave the address of the secured party, included the mailing address of the Debtor, and gave a description of the collateral covered by the Security Agreement. It was also designated an amendment to the original financing statement and identified the original financing statement by file number.

The Norfolk office was closed in 1979 and its remaining inventory was transferred to Richmond. From the evidence presented, the Court made a finding of fact that the total value of the inventory transferred from Norfolk to Richmond at that time was $3,000.

The collateral in dispute in this proceeding consists of exhaust system products, parts and accessories including but not limited to mufflers, exhaust pipes, brackets, clamps and storage racks for the products. The above collateral has been sold by the Trustee after notice and with the Court's authorization for a price of $37,000, $7,500 of which is attributable to the storage racks.

At trial a question of fact arose as to whether the storage racks were included in the description of the collateral covered under the Security Agreement. Maremont argued that since the mufflers, exhaust pipes, tail pipes, clamps and accessories constitute such tremendous bulk and thus require storage racks for their handling and sale, such storage racks should be considered part of the accessories covered under the Security Agreement. The Trustee argued that "component parts, and all accessory parts ..." were those parts and accessories which attach to the vehicles serviced by G. G. Moss and not to those devices which assist in the sale of exhaust system products. After the presentation of evidence on this point by expert witnesses, the Court made a determination of fact that the storage racks were not accessories to ride control products.

## CONCLUSIONS OF LAW

It is the Court's opinion that the description of the collateral in the Security Agreement and financing statement was not intended to and did not encompass the storage racks. Therefore, the security interest, if valid, did not pertain to the storage racks in the business of G. G. Moss.

■ The paramount issue to which this Court must address itself is whether the amendment to the financing statement which Maremont filed with the S.C.C. on August 19, 1976, was effective to properly perfect the security interest Maremont had with G. G. Moss pursuant to its Security Agreement. The Uniform Commercial Code as adopted in Virginia is controlling in this case. That portion of § 8.9–401 of the Code of Virginia (1950), as amended, set out below, dictates the proper place to file a financing statement to perfect the security interest. It states:

"(1) the proper place to file in order to perfect a security interest is as follows . . .

(c) In all other cases in the office of the State Corporation Commission and in addition, if the debtor has a place of business in only one county or city of this state, also in the office of the clerk of the Court in which deeds are admitted to record of such county or city, or if the debtor has no place of business in the state, but resides in the state also in the office of the clerk of the county or city in which he resides."

It is clear that the filing of the financing statements by Maremont in 1973 in the Clerk's Office of the S.C.C. and in the Circuit Court of the County of Henrico at a time when G. G. Moss had but one place of business in the City of Richmond was ineffective to perfect its security interest. Section 8.9–401 required Maremont to file in the Office of the S.C.C. and in the Circuit Court of the City of Richmond, and its failure to do so rendered the security interest ineffective. *In re Hurt Enterprises, Inc.,* 321 F.Supp. 1307 (W.D.Va.1971).

In August of 1976, Maremont filed an amendment to the financing statement in the Office of the S.C.C. At that time, G. G. Moss had two business locations, one in Richmond and one in Norfolk. At the time of the dual locations, had Maremont filed an original financing statement at the Office of the S.C.C. which complied with the requirements of § 8.9–402 of the Code of Virginia (1950), as amended, there would be no doubt that Maremont would have had a perfected security interest in the described collateral in the financing statement at both locations of G. G. Moss. This is clear for § 8.9–401 would have required only a filing of Maremont's financing statement in the Office of the S.C.C. The closing by G. G. Moss of its Norfolk location in 1979 would not alter the effect of a prior filing. Va.Code Ann. § 8.9–401(3) (1965 Added Volume). The question then becomes whether a financing statement which purports to be an amendment to a financing statement, which contains all the necessary elements of a financing statement, is sufficient to perfect Maremont's security interest in the inventory of G. G. Moss. The elements of a valid financing statement are delineated in § 8.9–402 of the Code of Virginia (1950), as amended. It provides:

"(1) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral . . .

. . . . .

(8) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

There is no question but that the amendment to the financing statement filed by Maremont in 1976 contained all the necessary information to make it a financing statement. Specifically, it gave the names of the Debtor and the secured party, was signed by the Debtor, gave the address of the secured party, gave the mailing address of the Debtor, contained a statement indicating the type of collateral and the description of the collateral. In addition it identified the original financing statement by file number, was identified as an amendment to the financing statement and was signed by the secured party which is in conformity with § 8.9–402(4) *infra.*

The Official Comment to § 8.9–402 of the Code of Virginia (1950), as amended, sets forth the purpose for filing of financial statements.

"This section adopts the system of 'notice filing' which has proved successful under the Uniform Trust Receipts Act. What is required to be filed is not, as under chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. Section 9–208 provides a statutory procedure under which the secured party, at the debtor's request, may be required to make disclosure. Notice filing has proved to be of great use in financing transactions involving inventory, accounts and chattel paper, since it obviates the necessity of refiling on each of a series of transactions in a continuing arrangement where the collateral changes from day to day."

The concept of notice filing is to be contrasted against the Code's requirement that an amendment will not extend the life of an original financing statement. Va.Code Ann. § 8.9–402(4), *infra.* To decide that a security interest is perfected by the amendment to the financing statement because it contains all the necessary elements of an original financing statement, is no more than concluding that all amendments to financing statements are original financing statements. If amendments to financing statements are original financing statements for the purpose of perfection, would they not be original financing statements for other purposes? The Code specifically rejects this concept, for § 8.9–402(4) limits the function of an amendment to a financing statement. It reads as follows:

"A financing statement may be amended by filing a writing signed by both the debtor and the secured party. All amendments to financing statements

shall identify the original financing statement by file number. An amendment does not extend the period of effectiveness of a financing statement. If any amendment adds collateral, it is effective as to the added collateral only from the filing date of the amendment. *In this title, unless the context otherwise requires, the term 'financing statement' means the original financing statement and any amendments.*" (emphasis added)

Furthermore, since the last sentence of the above section expressly states that financing statements include any amendment, it seems proper to interpret that sentence to mean that the amendment should not be viewed as standing in its own right as a financing statement.

While an amendment to a financing statement may serve several purposes, it is an amendment which relates back to the original financing statement and cannot perfect a security interest if the original was defective.

In the instant case, Maremont attempted to amend an original financing statement which was defective and, therefore, unperfected. The amendment did nothing more than to add additional collateral to an unperfected security interest.

To subscribe to Maremont's position would create unintended results. For example, if a company, which had but one location improperly files only at the S.C.C. and not in the county or city of its business, it would be unperfected. But at the instance that it opened a second business, which would require filing only at the S.C.C., Maremont's logic would dictate that the security interest would be perfected at that moment. The Code provides otherwise and sound logic would also dictate otherwise.

Maremont's original filing was defective and unperfected. The amendment to the financing statement did not act to perfect the security interest. The Trustee, pursuant to § 544(a) of the Bankruptcy Code (11 U.S.C.) has a superior interest to a security interest unperfected at the time of the com-

mencement of the case. Maremont's interest in the inventory of G. G. Moss was unperfected and, therefore, the Trustee's rights to that inventory is paramount.