### In re TEBBS CONSTRUCTION CO., INC., Debtor.

### Robert A. CANFIELD, Trustee, Plaintiff,

### v.

### SMALL BUSINESS ADMINISTRATION and Chesapeake National Bank, Defendants.

### Bankruptcy No. 82–01156–R. Adv. No. 83–0161–R.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

April 3, 1984.

---

**3.** As debtor in possession, CRS possesses the rights of a trustee in bankruptcy. 11 U.S.C.A. § 1107(A).

Robert A. Canfield, Richmond, Va., for plaintiff.

Stran L. Trout, Richmond, Va., for Small Business Admin.

Paul C. Stamm, Jr., White Stone, Va., for Chesapeake Nat'l Bank.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court upon motions by the Small Business Administration and Chesapeake National Bank for the determination of their secured status. On February 14, 1984 this Court held an evidentiary hearing at which counsel for Chesapeake National Bank and counsel for the trustee presented evidence and argument as to the validity of the lien alleged to be held by Chesapeake National Bank on the proceeds of the trustee's sale of certain machinery and equipment formerly owned by the debtor. After consideration of the argument by counsel and an analysis of the applicable law, this Court renders the following opinion.

## STATEMENT OF FACTS

This matter initially came before the Court on the trustee's complaint to sell certain tangible personal property free and clear of liens. On July 8, 1983, this Court entered an order authorizing the trustee to sell certain personal property free and clear of liens and that any valid liens on the property sold would be transferred to the proceeds of sale. The Small Business Administration (SBA) had a lien on the property sold which was transferred to the proceeds of the sale. A dispute arose between the trustee and Chesapeake National Bank (CNB) as to whether CNB had a valid lien that attached to the proceeds of sale. The

validity of that lien is the subject of the matter before the Court.

For purposes of the Court's determination, the parties have stipulated the relevant facts as follows:

1) Pursuant to a loan made to the debtor by CNB on January 22, 1975, CNB filed a financing statement on January 27, 1975 in both the Clerk's Office of the Virginia State Corporation Commission and in the Clerk's Office of the Circuit Court of Lancaster County, Virginia.

2) In 1977 the SBA, pursuant to a note executed in its favor by the debtor, filed a financing statement in the Clerk's Office of the Virginia State Corporation Commission on May 25, 1977 and in the Clerk's Office of the Circuit Court of Lancaster County, Virginia on May 26, 1977.

3) The SBA filed timely continuation statements on May 12, 1982, however, CNB failed to file timely continuation statements and, therefore, on January 27, 1982, CNB's financing statements lapsed.

4) On March 1, 1982, CNB filed a new original financing statement in the appropriate places. (It is the validity of this financing statement which is the narrow issue now before the Court.)

5) The amount due the SBA is approximately $22,000.00 and the amount due CNB is approximately $66,000.00.

6) The SBA's lien is superior to any lien that CNB may have with regard to the proceeds of the trustee's sale of the machinery and equipment.

## CONCLUSIONS OF LAW

With the above stipulations in mind the dispute before the Court is a narrow one. If the financing statement filed in 1982 by CNB is valid then CNB will have a lien on the proceeds of the sale of the machinery and equipment, but will be junior to the lien of the SBA. On the other hand, if the financing statement is defective and, therefore, invalid, then the trustee pursuant to 11 U.S.C. § 544(a) will assume a position superior to CNB with regard to said proceeds. Moreover, should the trustee prevail he may distribute the net proceeds unencumbered by any lien of CNB to general unsecured creditors of the estate. Should the trustee prevail CNB may nonetheless have a claim, although unsecured, for the amount of its indebtedness and may share in any distribution the trustee is able to make to unsecured creditors filing proofs of claim.

Resolution of the issue now before the Court turns on the interpretation of *Va. Code* § 8.9–402 which all parties agree is applicable to the present proceeding. Said section provides in pertinent part:

(1) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral....

(2) A financing statement which otherwise complies with subsection (1) is sufficient when it is signed by the secured party instead of the debtor if it is filed to perfect a security interest in:

(a) Collateral already subject to a security interest in another jurisdiction when it is brought into this Commonwealth, or when the debtor's location is changed to this Commonwealth. Such a financing statement must state that the collateral was brought into this Commonwealth or that the debtor's location was changed to this Commonwealth under such circumstances; or

(b) Proceeds under § 8.9–306 if the security interest in the original collateral was perfected. Such a financing statement must describe the original collateral; or

(c) Collateral as to which the filing has lapsed; or

(d) Collateral acquired after a change of name, identity or corporate structure of the debtor ...

(8) A financing statement substantially complying with the requirements of this section is effective even though it con-

tains minor errors which are not seriously misleading.

The parties do not contest whether the financing statement was properly filed. Therefore, if this Court finds that all the elements of *Va. Code* § 8.9–402 have been satisfied, this Court must hold that CNB has a valid lien although inferior to the lien of the SBA.

Section 8.9–402 requires that the following elements exist for a financing statement to be valid: (1) the name of the debtor; (2) the name of the secured party; (3) the signature of the debtor; (4) the address of the secured party from which information concerning the security interest may be obtained; (5) the mailing address of the debtor; and (6) a statement indicating the types, or describing the items of collateral. The parties agree that all of these elements have been met except that the parties do not agree that the financing statement was signed by the debtor and the parties do not agree that the financing statement contains an adequate description of the collateral.

█ As to the requirement that the financing statement be signed by the debtor, § 8.9–402(2)(c) provides that a financing statement that otherwise complies with the elements described above is sufficient when signed by the secured party instead of the debtor if it is filed to perfect a security interest in collateral as to which the filing has lapsed. In the instant matter, the parties have stipulated that the filing of the original financing statement as to the collateral has lapsed. Therefore, this Court holds that the lack of signature by the debtor with respect to the financing statement whose validity is now before the Court does not cause the financing statement to be defective. Rather the provisions of § 8.9–402 clearly provide that such a signature by the secured party under these circumstances is sufficient in itself. Thus, the only issue before the Court is whether CNB's new, original financing statement filed in May of 1982 contains an adequate statement of the collateral.

The description of collateral is found in the financing statement filed on March 1, 1982 and provides as follows:

> Accounts receivable, inventory, and those items of machinery and equipment, with replacements thereof, as set forth in the attached security agreement. This financing statement applies to accounts receivable and inventory now owned and hereafter acquired.

The dispute centers on whether CNB has a lien on proceeds in the hands of the trustee from the sale of machinery and equipment or whether no such lien exists due to an inadequate description. Stated differently, the issue is whether the bank's failure to attach the security agreement to the financing statement, (which contained an enumeration of the items of machinery and equipment covered by the financing statement) causes the financing statement to lack an adequate description and, therefore, fail to perfect a valid lien.

Some courts have addressed the problem of where a financing statement attempted to incorporate another document to describe the collateral, but the document describing such collateral was not attached to the financing statement as provided in the financing statement. For. example, a financing statement was held defective in *In re Antekeier*, 6 UCC Rep.Serv. 1027 (Bkrtcy.W.D.Mich.1969) where the financing statement provided "see attached description of property" but no such attachment was filed with the financing statement. Thus, in *Antèkeier* the trustee in bankruptcy prevailed over the party filing such a defective financing statement. However, the opposite result was obtained in *In re Bowser*, 1 UCC Rep.Serv. 626 (Bkrtcy.W.D.Penn.1961). The court in *Bowser* held that a financing statement which provided a description of collateral as "see attached" to be a sufficient description of the collateral for purposes of U.C.C. § 402 because the court found that any interested party would be on notice that the schedule had been admitted inadvertently and could obtain the desired information from the secured party. 1 U.C.C.Rep. Serv. at 628. The instant matter differs

from both *Antekeier* and *Bowser* in that although the bank omitted the document specifically describing the items of collateral, the description on the financing statement did include the names of the *types* of collateral covered by the financing statement.

The United States Court of Appeals for the Third Circuit has set out a general rule in dealing with the problem of omitted documents of description. In *In re H.L. Bennett Co.*, 588 F.2d 389, 391 (3rd Cir.1978) the court held that a financing statement describing collateral as "all assets as contained in the security agreement executed even date herewith" is insufficient to satisfy Code requirements unless the document referred to is attached to the financing statement *or is otherwise publicly filed.*

The instant matter differs from the *Bennett* case in two respects. First, the financing statement in question provided in addition to the description of the property that an earlier original financing statement had been filed January 27, 1975 and gave the old file number and stated that the earlier financing statement had lapsed. Secondly, in the instant matter the financing statement in question mentioned "machinery and equipment" whereas the *Bennett* case only stated "all assets".

The first distinction is significant because under the rule set out in *Bennett* a financing statement may not be defective where the security agreement although not attached has otherwise been publicly filed. In the instant matter, the security agreement that specifically spells out and describes the property in which the bank sought to perfect a lien was filed with the original financing statement filed January 27, 1975. Therefore, the security agreement that was not attached to the May 1, 1982 financing statement was, however, "otherwise publicly filed" and arguably that security agreement was incorporated by the March 1, 1982 financing statement by reference to the January 27, 1975 financing statement. Thus, in addition to being "otherwise publicly filed" the omitted security agreement was arguably incor-

porated by reference. Such incorporations have been upheld by various state and federal courts. *See e.g., In re Modern Engineering & Tool Co.*, 4 B.C.D. 713 (Bkrtcy. D.C.Ct.1978); *In re Aragon Industries, Inc.*, 14 U.C.C.Rep.Serv. 1218 (Bkrtcy.S.D. Fla.1973).

■ The financing statement in question here also significantly differs from that in the *Bennett* case in a second manner in that the instant financing statement used the language "machinery and equipment" whereas the financing statement in the *Bennett* case used only the language "all assets". This is significant because the use of such "types" of collateral is in itself a sufficient description of collateral under the Commercial Code. *In re Varney Wood Products*, 458 F.2d 435 (4th Cir.1972); *Biggins v. Southwest Bank*, 490 F.2d 1304 (9th Cir.1973). It is significant to recall at this time that *Va.Code* § 8.9–402(1) states that a financing statement contain a statement "indicating the types, or describing the items, of collateral." It is well settled that had the instant financing statement provided only the language "machinery and equipment" that the financing statement would have a sufficient description and, therefore, be a valid financing statement. *See National Equipment Rental Ltd. v. United States*, 25 UCC Rep.Serv. 566 (C.D. Cal.1978) ("machinery"); *Galleon Industries, Inc. v. Lewyn Machinery Co.*, 50 Ala.App. 334, 279 So.2d 137, cert. denied, 291 Ala. 779, 279 So.2d 142 (1973) ("equipment"); *Security Bank and Trust Co. v. Blaze Oil Co.*, 463 P.2d 495 (Wyo.1970) ("machinery and equipment").

■ Because the financing statement's use of "machinery and equipment" would be sufficient in itself, the issue becomes whether the attempt to more specifically describe said machinery and equipment and an omission in such further description causes the description to be inadequate for purposes of *Va.Code* § 8.9–402(1). At least one court has addressed this problem. The court in *In re Stegman*, 15 U.C.C.Rep. Serv. 225 (S.D.Fla.1974) in affirming the bankruptcy court held that a financing

statement describing the collateral as "various equipment, see scheduled 'A' attached hereto" was sufficient even though the attachment was omitted. In so holding the court stated:

The term 'various equipment,' a well-defined subclass of personal property and term of legal art under the Code, sufficiently indicates the *type* of collateral so as to put third parties on notice that certain property in possession of the debtor may be subject to a prior security interest and that further inquiry is necessary. . . .

The court does not accept the reasoning of the trustee that the respondents' omission of the detailed Schedule A after referring to the Schedule on the face of the financing statement is misleading, confusing and, therefore, insufficient indication of the property covered.

15 U.C.C.Rep.Serv. at 227–28. In addition, courts have consistently held that an error in an attempt to be more specific does not cause a financing statement to be defective. *See, e.g., In re Delta Molded Products, Inc.,* 416 F.Supp. 938 (N.D.Ala.1976); *Bank of Middleton v. Town & Country Ford Tractor, Inc.,* 27 U.C.C.Rep.Serv. 588 (Wis.Cir.Ct.1979). Although those cases generally involve a misdescription of a serial number only, this Court is satisfied that for policy reasons the same reasoning should apply to the instant case and that, therefore, the failure to further describe collateral where a description as to type alone would be sufficient does not cause the financing statement to be invalid.

■ The Court's decision herein is bolstered by the policy of the Uniform Commercial Code as articulated by the Fourth Circuit as well as other courts within this district. Section 8.9–402(8) provides that "a financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." This provision of the Uniform Commercial Code demonstrates clearly that the purpose of the section is to create a system of notice filing which contemplates further in-

quiry by a party in order to determine whether a particular asset is covered by a security agreement. See *In re Varney Wood Products, Inc.* 458 F.2d 435 (4th Cir.1972); *In re G.G. Moss, Co.,* 9 B.R. 47 (Bkrtcy.E.D.Va.1981); *In re Pischke,* 11 B.R. 913 (Bkrtcy.E.D.Va.1981). In fact, in *In re Cawthorn,* 1 B.R. 267, 272 (Bkrtcy. W.D.Va.1979) the Bankruptcy Court held that a security agreement used as a financing statement has an adequate description even though invoices referred to on the financing statement ("security agreement") were omitted, because the invoices were available and any searcher was on notice that the more detailed description of the collateral could be obtained.

This Court is satisfied that although the instant matter is an irregular attempt at a UCC filing, a "reasonably diligent searcher" would not be misled by the irregularity and, therefore, would be able to reasonably ascertain which assets were governed by the bank's financing statement in this matter. *See Strickler v. Thomas,* 7 B.R. 389 (Bkrtcy.W.D.Va.1980). The Court's decision herein is further bolstered by the line of authority which refuses to permit a trustee in bankruptcy to defeat secured creditors based solely on a technicality where there has been no showing that any unsecured creditors relied upon or were mislead by the secured creditors financing statement. *See e.g., In re Indian Springs Farm & Ranch, Inc.,* 27 U.C.C.Rep.Serv. 832 (Bankr.D.Utah 1979); *see generally,* Henson, *Secured Transactions* § 4–8 at 75 (2nd ed. 1979).

■ In summary, this Court concludes that Chesepeake National Bank holds a valid lien, inferior to the lien of SBA, on the proceeds of the trustee's sale of certain machinery and equipment formerly owned by the debtor. The Court reaches this conclusion because the listing of "machinery and equipment" by itself sufficiently described the "types" of collateral, *Va.Code* § 8.9–402(1) (Cum.Supp.1983), and, therefore, in itself also satisfies the notice requirements of *Va.Code* § 8.9–402. In addition and alternatively, the March 1, 1982

**748**

financing statement sufficiently incorporated by reference the security agreement filed with the January 27, 1975 financing statement for purposes of the notice requirements of *Va.Code* § 8.9–402. Moreover, the financing statement in question here although somewhat irregular in that it omitted an attachment which the face of the financing statement incorporated is not seriously misleading. *Va.Code* § 8.9–402(8) (Cum.Supp.1983). Finally, to decide otherwise would work an injustice to a secured creditor in causing a forfeiture of that party's rights where the trustee has not shown any hardship to unsecured creditors resulted from the minor irregularity.

An appropriate Order will issue.