**In re David F. ABELL and Donna F. Abell, Debtors.**

**Bankruptcy No. 86–00721–BRC–EAS.**

United States Bankruptcy Court, N.D. Mississippi.

Sept. 26, 1986.

Omar D. Craig, Oxford, Miss., for David and Donna Abell.

Michael Gratz, Tupelo, Miss., for First Citizens Nat. Bank.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration of the motion seeking relief from the automatic stay filed by First Citizens National Bank of Tupelo, Mississippi, hereinafter referred to as First Citizens or Bank; no responsive pleading having been filed by the debtors, David F. Abell and Donna F. Abell, d/b/a Dave's Camera Shop; on objection to the motion seeking relief from the automatic stay, as well as, a counterclaim seeking to void the lien of First Citizens, filed by the Trustee, Jacob C. Pongetti; both First Citizens and the Trustee being represented before the Court; the parties having agreed to a stipulation of facts, including the introduction of documentary evidence; and the Court having considered same, hereby finds as follows, to-wit:

### I.

This Court has jurisdiction of the parties to and the subject matter of this proceed-

ing pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, in addition to the general orders of reference executed by the United States District Court for the Northern District of Mississippi, dated July 27, 1984, and August 6, 1984. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(B), (C), (G), (K), and (O).

## II.

### STATEMENT OF FACTS

The debtor, David F. Abell, d/b/a Dave's Camera Shop, along with his wife, Donna F. Abell, executed a promissory note in favor of First Citizens National Bank on October 24, 1980, in the original principal sum of $100,000.00. As collateral for this note, First Citizens took a security interest in those items of personal property listed on Exhibits A and B, appended to the motion filed seeking relief from the automatic stay, consisting primarily of office equipment, fixtures, furniture, and photography equipment. First Citizens perfected its lien on this personal property by the filing of a Uniform Commercial Code financing statement with the office of the Chancery Clerk of Lee County, Mississippi, and the Mississippi Secretary of State, in compliance with state law, on November 9, 1980. A copy of the financing statement was appended as Exhibit B to the motion seeking relief from the automatic stay.

As additional security for the $100,000.00 loan, First Citizens obtained a deed of trust encumbering real property owned by the debtors. A copy of the deed of trust was appended as Exhibit C to the motion seeking relief from the automatic stay. The validity of this deed of trust and the resulting lien are not addressed by the trustee's objection and counterclaim, and as such, are not considered in this opinion.

Additionally, the debtors executed an amortized note in favor of First Citizens, dated July 20, 1985, in the principal amount of $21,360.86, bearing interest at the rate of 11.5% per annum, and having a final maturity of July 20, 1986. A copy of this note was appended as Exhibit F to the motion seeking relief from the automatic stay. This amortized note was apparently the renewal of an earlier promissory note executed by the debtors in favor of First Citizens on or about July 12, 1984, in the principal sum of $25,000.00. The earlier note was secured by a deed of trust, dated July 12, 1984, encumbering additional real property owned by the debtors, and reflected the principal amount of the indebtedness as $25,000.00. A copy of this deed of trust was appended as Exhibit D to the motion seeking relief from the automatic stay. The trustee has likewise voiced no objection to the validity of this lien or the deed of trust, encumbering the real property described therein. Consequently, the motion seeking relief from the automatic stay, insofar as it pertains to the debtors' real property, encumbered by the aforementioned two deeds of trust, i.e., Exhibits C and D to the motion, is well taken and will be sustained. The discussion concerning the personal property owned by the debtors will continue.

The financing statement, filed on November 9, 1980, applicable to the aforementioned furniture, fixtures, equipment, etc., remained in effect for a period of five years. Prior to the expiration of this five year period, no *continuation statement* was filed by First Citizens. However, on May 9, 1986, First Citizens filed a second *financing statement* with the office of the Chancery Clerk of Lee County, Mississippi, and the Mississippi Secretary of State, but without the debtors' signatures. (Note: There is a distinct difference between the filing of a financing statement and the filing of a continuation statement under the circumstances existing in this case, which will be discussed more fully hereinbelow.) On May 14, 1986, the debtors filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

The trustee's objection to the motion seeking relief from the automatic stay is based on the premise that First Citizens' lien is void as to the trustee since the initial financing statement expired after the passage of five years, and that the subsequent

filing of the second financing statement, without the signature of the debtors, is insufficient to revive the perfection of First Citizens' security interest.

## III.

## DISCUSSION OF THE ISSUES

The central issue in the case is whether a financing statement which has lapsed or expired can be revived through the filing of a second financing statement which does not contain the debtors' signatures. A collateral issue is whether the security interest continues during the period of time between the expiration of the first financing statement and the time of the refiling of the second financing statement so that the second filing is not a preferential transfer, voidable by the trustee pursuant to 11 U.S.C. § 547(b). Another collateral issue, not covered by this opinion for reasons which will become obvious, is whether the second filing could be considered as a fraudulent involuntary transfer as contemplated under the provisions of 11 U.S.C. § 548(a)(2)(A) and (B).

The first part of this discussion is based on the proposition that the perfection of a security interest lapses at the end of five years from the date of the filing of the initial financing statement unless a continuation statement is filed. *See Matter of Bufkin Brothers, Inc.,* 757 F.2d 1573, 1576 (5th Cir.1985) (applying Mississippi law).

Normally, the question presented in a case such as that now before the Court would be a simple one calling for a discussion of the Uniform Commercial Code filing requirements under state law and the implementation of these requirements mechanically. However, the Mississippi Legislature has enacted two statutes, regarding the continued perfection of a security interest created under the Uniform Commercial Code, which may seem at first impression to be somewhat conflicting. These two sections, set forth hereinbelow, provide how and when a secured party may continue perfection of a security interest both prior and subsequent to a lapse of

perfection, resulting from the expiration of the five year effectiveness period. Miss. Code Ann. § 75–9–402(2)(c) (1972) (effective April 1, 1978) states, in pertinent part, as follows:

> (2) A financing statement which otherwise complies with subsection (1) is sufficient *when it is signed by the secured party instead of the debtor* if it is filed to perfect a security interest in:
>
> . . . .
>
> (c) collateral as to which the filing has lapsed; ...

[emphasis added]

Thus, it is obviously contemplated that a *financing statement* may be filed without the debtors' signatures, once a previously filed financing statement, signed by the debtors, has lapsed. This conclusion is further substantiated by the UCC–1 financing statement form itself which currently contains language to the effect that, "[t]his statement is filed without the debtor's signature to perfect a security interest in collateral as to which the original filing has lapsed."

On the other hand, Miss.Code Ann. § 75–9–403(2) and (3) (effective July 1, 1985) state:

> (2) Except as provided in subsection (6), a filed financing statement is effective for a period of five (5) years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of the five (5) year period unless a continuation statement is filed *prior to* the lapse. If a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains perfected until termination of the insolvency proceedings and thereafter for a period of sixty (60) days or until expiration of the five (5) year period, whichever occurs later. *Upon lapse, the security interest becomes unperfected unless it is perfected without filing.* If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a per-

son who became a purchaser or lien creditor before lapse.

(3) A continuation statement may be filed by the secured party within six (6) months prior to the expiration of the five (5) year period specified in subsection (2). Any such continuation statement must be signed by the secured party, identify the original statement by file number, *and state that the original statement is still effective....* Upon *timely* filing of the continuation statement, the effectiveness of the original statement is continued for five (5) years after the last date to which the filing was effective, whereupon it lapses in the same manner as provided in subsection (2) unless another continuation statement is filed prior to such lapse. [emphasis added]

Thus, Miss.Code Ann. § 75–9–403 (1972) requires the filing of a *continuation statement,* prior to the lapse of the financing statement, which includes a statement that the original financing statement is still in effect.

Since these two statutory concepts are not diametrically in contradiction to one another, a literal translation should be afforded each section so that a logical decision can be fashioned in this proceeding. Miss.Code Ann. § 75–9–402(2) (1972) deals with financing statements as defined in Miss.Code Ann. § 75–9–402(4) (1972), which provides very specifically that "the term 'financing statement' means the original financing statement and any amendments." The term "continuation statement" is conspicuous by its absence.

■ Miss.Code Ann. § 75–9–403(2) and (3) (1972) deal with the filing of continuation statements. The conclusion, therefore, becomes inescapable that even though a secured party omits to timely file a *continuation statement,* a new *financing statement* may be filed, even after the initial financing statement has lapsed, with *almost* the same effect as a timely filed continuation statement. Neither requires the debtor's signature. One wonders whether the Mississippi Legislature intended such a result. In all fairness, however,

the principals of equity would dictate a similar conclusion for two reasons: (1) the perfection statutes have been enacted primarily for the purpose of providing notice to others, not the creation of security interests; and (2) a debtor would have no reason whatsoever to accommodate the lending creditor by the execution of a timely prepared continuation statement or by the execution of a renewal financing statement, prepared to revive a lapsed perfection.

■ In the case now before this Court, First Citizens filed a financing statement without the debtors' signatures several months subsequent to the lapse of the original financing statement. The appropriate "box" was marked indicating that the second financing statement was filed without the debtors' signatures to perfect a security interest in collateral as to which the original filing had lapsed. The Court is of the opinion that the filing of this subsequent financing statement was sufficient to renew the perfection of First Citizens security interest, effective at least on May 9, 1986.

### IV.

■ The question that now must be answered is whether the subsequent perfection of a security interest can relate back to the date that the original financing statement expired. A careful reading of the two statutes reveals that there is a difference in maintaining a continuously perfected security interest. A secured creditor, electing to timely file a continuation statement, is protected against intervening creditors from the date of the original filing through the conclusion of the extended five year period. A secured creditor, filing a subsequent financing statement without the debtors' signatures, particularly after the original financing statement has lapsed, is not protected during the interim period between the date of lapse and the date of refiling. Thus, the priority of a secured creditor's claim, in relation to other secured creditors, could well be jeopardized by the late filing of a

financing statement, as opposed to the timely filing of a continuation statement.

## V.

The question that must be answered now concerns the lien priority status of the trustee in bankruptcy, as a result of his statutory "avoiding powers", compared to the status of a secured creditor whose lien was re-perfected only five days before the filing of the bankruptcy petition.

First Citizens cites the case of *In Re Tebbs Construction Co., Inc.*, 39 B.R. 742 (Bankr.E.D.Va.1984). In that case, the creditor, Chesapeake National Bank, took a security interest in personal property of the debtor corporation and properly filed financing statements to perfect its lien. Subsequently, the Small Business Administration took a second security interest in the same property and properly perfected its lien. The Small Business Administration timely filed a continuation statement to protect its financing statement. Chesapeake National Bank, however, allowed its financing statement to lapse. Two years after the financing statement had lapsed, Chesapeake National Bank filed a second financing statement without the debtor's signature. The parties stipulated that the Small Business Administration lien was superior to that of Chesapeake National Bank. The issue narrowed to the question of whether the lien of Chesapeake National Bank was superior to that lien conferred upon the trustee in bankruptcy pursuant to 11 U.S.C. § 544(a). The bankruptcy court ruled that the lien of Chesapeake National Bank was, in fact, superior to that of the trustee in bankruptcy stating, in effect, that the more recently filed financing statement, without the debtor's signature, was not defective, and that its filing was prior to the effective date of the trustee's lien position which occurred on the date of the filing of the bankruptcy petition. The Court in *Tebbs*, however, was not called upon to address the question of whether the filing of the second financing statement constituted a preferential transfer in favor of Chesapeake National Bank which was

subject to the avoidance powers of the trustee pursuant to 11 U.S.C. § 547(b). Unfortunately, the *Tebbs* decision did not list the date that the bankruptcy petition was filed, so whether the ninety day preference period was applicable remains unanswered.

As mentioned in the paragraph immediately preceding, the avoidance of preferential transfers is addressed in 11 U.S.C. § 547(b), the text of which is set forth as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

. . . .

(5) that enables such creditor to receive more than the creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The preference question has been addressed in the case of *In Re Vodco Volume Development Co., Inc.*, 567 F.2d 967 (10th Cir.1977). In that case a *continuation statement* was filed after a financing statement had been permitted to lapse. The Colorado Uniform Commercial Code statute, applied in the case, allowed for the filing of a continuation statement up to two years *after* the lapse of a financing statement. This statute, however, protected the rights of intervening creditors, i.e., those creditors who acquired rights against the debtor subsequent to the time when the

filing should have been made and prior to the actual refiling. These intervening creditors, much like the Small Business Administration in the *Tebbs* case, would enjoy a priority of their liens over that of the re-filing creditor who had permitted the perfection of his security interest to lapse. The issue argued to the Court was whether the late filing of the continuation statement, which occurred within the two year statutory grace period, but also within the statutory preference period, was sufficient to permit a continuous perfection during the period of actual lapse, so as to prevent the trustee from avoiding the filing of the continuation statement, as well as, two other transactions, as preferential transfers. The Court held that there was no continuous perfection, particularly because of the fact that intervening creditors could have obtained superior liens to that of the creditor who re-filed after the lapse had occurred. The Court also held that the procedure to be followed in perfecting a security interest in the personal property of a bankrupt is to be determined in accordance with state law; however, the time at which perfection becomes effective against the trustee in bankruptcy is determined by federal law. At 970.

### VI.

Considering the discussion in the paragraphs preceding, the Court concludes first that the perfection of a security interest lapses at the end of the statutory five year period. A second financing statement can be filed after the first has lapsed, without the debtor's signature. As noted earlier, the primary purpose of the perfection statutes is merely to notify other potential creditors of a secured party's interest in collateral. In the opinion of this Court, a secured party's rights in collateral would be adversely affected for no justifiable reason if the secured party was required to obtain the debtor's signature on the second financing statement, merely to replace a properly executed financing statement that had expired. The debtor has no motivation to sign the second financing statement because he receives no new or additional value.

For the express purpose of continuing the notice to other creditors, Miss.Code Ann. § 75–9–402 (1972) was amended to provide for the renewal of the perfection of a properly executed financing statement without the debtor's signature. This section, however, does not provide for the continuous perfection of that security interest, which can be obtained by the timely filing of a continuation statement as set forth in Miss.Code Ann. § 75–9–403 (1972).

The Court concludes, therefore, that the filing of a second financing statement, with or without the debtor's signature, in an effort to revive a lapsed financing statement, does not permit the continuous perfection of the lapsed financing statement. There is an obvious gap in which intervening creditors may perfect liens superior in priority to that of the creditor whose financing statement has lapsed even if only temporarily. This determination is in keeping with Miss.Code Ann. § 75–9–403(2) and (3) (1972), which states "[u]pon lapse the security interest becomes unperfected ... it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse."

In this same regard, federal law, rather than state law, determines the time at which perfection can become effective against the trustee in bankruptcy. The transfer in the instant case occurred on May 9, 1986, at the time that First Citizens filed its second financing statement without the debtors' signatures. Since there was no continuous perfection, this date cannot relate back to the date of filing of the original financing statement. The transfer, therefore, falls within the ninety day preference period which is set forth in 11 U.S.C. § 547(b)(4)(A). As mentioned earlier, the trustee in this case has filed no complaint seeking to set aside the lien of First Citizens, which regained life on May 9, 1986, as a preferential transfer. This issue was merely raised in discussions concerning the motion seeking relief from the automatic stay. The parties were not pre-

pared and did not present proof concerning the applicability of 11 U.S.C. § 547(b), or any defenses thereto. The Court, therefore, in this Opinion, makes only the limited findings that there was no continuous perfection of First Citizens' original financing statement, and that the perfection of the lien was revived effective May 9, 1986, when the second financing statement was filed without the debtors' signatures, a time within the ninety day preference period. The Court does not conclude *at this time* that all of the elements of a preferential transfer are present.

A final decision on First Citizens' motion seeking relief from the automatic stay, as it applies to the debtors' personal property, is hereby reserved for a period of twenty days from and after the date of this Opinion. Should the trustee so elect, he may file an appropriate complaint within the aforesaid twenty day period seeking to set aside the filing of the second financing statement on May 9, 1986, as a preferential transfer, or any other alternative relief that may appear appropriate. Should the trustee not elect to file such a complaint, First Citizens' motion seeking relief from the automatic stay shall be granted at the conclusion of the twenty day period, without further hearing, but with the entry of an appropriate order.

A separate Order will be entered consistent with this Opinion.