PRICE, J.
The plaintiff brought this action to foreclose a mortgage on premises alleged to be described in the second amended petition, as situated in sections 13 and 14 in Napoleon township, Henry county, Ohio, and more particularly described as follows:
“The homestead now occupied by Mrs. Mary Dodd, widow of William Dodd, in the incorporated village of Napoleon, Ohio, bounded on the north by Ohio street; on the east by an alley extending from Cory street to Ohio street; on the south by Cory street and Bryan pike; and on the west by Reynold street. ’ ’
The consideration of the mortgage is $3,500, and the instrument is alleged to have been executed on the 21st day of December 1876, by B. E. Shelden, who then owned the premises, to Ezra S. Dodd, to secure to him the purchase price of the premises, and the mortgage was recorded December 23,1877, as found in volume 12, on page 19, of the record of mortgages' of Henry county.
The plaintiff further avers that, subsequent to the record'ng of the mortgage, Ezra S. Dodd signed and transferred the same *719 to William Sheffield, some time in 1881, as collateral security for about $130, which Mary Dodd, Jr., had borrowed from Sheffield, and that this loan was paid.when due, and the mortgage returned back to Ezra S. Dodd. It is also stated that on or about October 1, 189á, Ada Norton, as sole heir of William Sheffield, assigned and transferred said mortgage to the plaintiff, and that the estate of William Sheffield has been fully settled by the administrator thereof, and that he has been discharged, and never claimed any interest in or title to the mortgagé,and had no title or interest in the same, for the reason that Sheffield held it only as collateral for the debt of the sister which had been fully paid to him, prior to his death.
. This is one source of title to the mortgage set up in the petition.
In order to further establish her title and ownership, it is alleged that the mortgagee, Ezra S. Dodd, is now deceased, and that at the time of his death, he was a resident of Guthrie in Oklahoma Territory — that letters of administration on his estate were issued to the plaintiff by the probate court of Logan county, in that territory — that the estate has been settled — all the preferred.debts have been paid and her final accounts filed and approved; and that upon distribution of the balance of the estate, the probate court ordered the mortgage turned over to the plaintiff, and that thereby she became and is the holder thereof in her own right.
There was no note or bond secured by the mortgage, and by its terms it did not become payable until the death of Mary Dodd, widow of William Dodd, which occurred in the year 1888.
The defendants answer separately. Mary Groll admits that she owns the premises described in the petition, but denies that plaintiff is the owner or holder of the mortgage; and denies that there ever was such mortgage executed or recorded, covering said premises; and denies that she had actual or constructive notice of such mortgage when she purchased the premises, and specially denies that the probate court of Logan county, Oklahoma, ever took or had jurisdiction over the disposition of the mortgage, and in short, denies all the proceedings and orders of that court which plaintiff set out as her source of title
There are other averments in the answer which are not material to the controversy here.
The husband, John Groll, also denies all the averments of the petition, and sets up a tax deed for the premises which was executed in pursuance of a delinquent tax sale made in January, 1875, and that he has paid subsequent taxes and made lasting and valuable improvements.
It is not claimed now that this is a valid title to the premises, and it only vests in him the lien of the state for taxes, and as his rights would be preserved and protected under the law for occupying claimants, we give no further attention to this answer.
We have heard the evidence and arguments of counsel, and as the case appears to us, it raises two enquiries for our deter.mination.
First — Did the mortgage executed by B. E. Sheldon to Ezra S. Dodd, September 21, 1876 — the one in suit — so describe the premises involved, as to become a lien thereon and give the *720 notice, when recorded, which is contemplated by the law, to one desiring to know the condition of the title?
Second — Does the testimony show that plaintiff is the owner of the mortgage?
On the first question we have had but little trouble in reaching a conclusion.
The mortgage does not contain the clear and pertinent description set out in the second amended petition, and in iact falls far short of it. Of itself it is not a complete or intelligent description, and its terms call for the examination of another recorded instrument to give it force and effect. Here is the language in the mortgage:
“The following described premises situate in the village of Napoleon, county of Henry, and state of Ohio, and known as the name premises conveyed by said Ezra S. Dodd, to the grantor herein by deed of special warranty, dated, executed and delivered August 16, 1876, and recorded---A. D., 187 — , in volume--of deeds in Henry county, and on page ——.
“This mortgage is given to secure the balance of purchase money remaining unpaid on said premises.’
It is seen that the maker of this mortgage is B. E. Sbeldon, and the mortgagee is Ezra S. Dodd, and it refers to a deed dated August 16, 1876, from the same Dodd to the same Sheldon, and the deed was recorded February 2, 1878, in volume 26, on page 899, of deed records of Henry county, and its date is August 16, 1876, same as stated in the mortgage, and it contains in substance the description given in the amended petition.
The deed and mortgage were both on record several years prier to the purchase of defendant Mary Groll, and she purchased and received her deed for the premises from the same B. E. Sheldon who had executed the mortgage, and as an important faot, the mortgage recites that it was given to secure unpaid purchase money to Ezra S. Dodd. In searching for incumbrances when she purchased, if she oame upon the record of a mortgage from B. E. Sheldon, her grantor, to Ezra S. Dodd, to secure unpaid purchase money, she there found reference for description to a deed between the same parties under date of August 16,1876. The record of the mortgage contained the sections of the township and name of the incorporated village and county where the land is situated, and for more particular description refers to a deed between the same parties under the date of August 16, 1876. By this record she was put fairly upon inquiry, and had such notice that an examination of the deed would have disclosed fully the complete description of the premises. Having looked at the record of this mortgage, as we presume in law, she did look, she could not safely neglect to take the one step further which was necessary to give oomplete information as to the title.
See Jones on Mortgages, volume 1, section 67. “A mortgage which does not name the town, county or state in which the land is situated, may nevertheless be rendered certain in the description of the premises by reference to another deed which contains a full and accurate description; or, to the land of adjacent owners.”
See also Robinson v. Brennan, 115 Mass., 582, wherein the court held.
*721 ■“Where a mortgage deed describes the property conveyed a® ‘the tract of land this day conveyed by A. to B. and by B. to me by deed of this date’ — and does not name the town, county or state in which the land is situated, the deeds from A. to B. and from B. to the mortgagor, which contain descriptions of the land, may be admitted in evidence, on the trial of an entry to foreclose the mortgage, although said deeds were not on record when the mortgage was executed. The deeds referred to in the mortgage make the description certain and were-rightly admitted to evidence.”
The defendant purchased from B. E. Sheldon, mortgagor,and hence the deed referred to in this mortgage is in her chain © title, and in our judgment the description is sufficient.
Second — The second inquiry involves more difficult questions.
Has the plaintiff established by competent evidence that sh® owns the mortgage?
Let us notice the prominent fact. It is undisputed that some time in the year 1881, Mary Dodd Jr., a sister of Erza S. Dodd, borrowed from William Sheffield, a sum not exceeding $180 to furnish means to attend school, and that her brother Ezra pledged the mortgage in question, to Sheffield as collateral security for Mary’s note for the borrowed money. Sheffield died in October, 1883, and no such note or mortgage was found among his papers, and neither was it mentioned as part of hi® estate.
The note was never presented to Mary for payment by Sheffield or his administrator, and we learn nothing further of the-note from any witness.
Mr. Acklan testifies, and he is not contradicted — that Ezra S. Dodd died at Toledo, December 31, 1892, but had been a resident of Oklahoma Territory. In the following Januaryv witness went to Guthrie in that territory and made a list © the papers found in the bank box of Ezra S. Dodd, among-which he found the mortgage in suit. This was nine year® after the death of Sheffield. Witness says he delivered the mortgage and memorandum of the papers to the appraisers appointed by the probate court of Logan eounty, Oklahoma, to-appraise the estate of Dodd. He identifies the mortgage ins suit as the one found among Dodd’s papers.
From this fact and the further fact that no demand of payment was ever made on Mary, the borrower, we can safely presume that Ezra paid Sheffield the note and took back from him the mortgage which he had pledged as collateral security.
Then, how did the plaintiff acquire the mortgage?
One way pleaded, is by an assignment of the mortgage to* her by Ada Norton, as sole heir of William'Sheffield. But that-attempted assignment purport# to have been made at Topeka, Kansas, October 1, 1894, almost two years after the death of Ezra S. Dodd, and after it had been found among his paper® and inventoried as part of his estate. It was also over nine years after the death of Sheffield. Therefore, Ada Norton did not own or have in her possession the mortgage when she madsber assignment. It was the property of Ezra S. Dodd at hi® death.
We think it quite clear as a presumption, that Scheffield fa&<$ been paid by Ezra and the mortgage surrendered prior to October, 1883. If that is true, no interest in or title to the mort *722 ■gage, ever vested in Ada Norton. She was the sole heir of Sheffield. Hence,sh® had nothing in the mortgage to transfer, and her attempt to pass title is a nullity.
The only other source of title to the mortgage brought to our attention, is a transcript of the record of certain proceedings bad in the settlement of the estate of Ezra S. Dodd, in the probate court of Logan county, Oklahoma Territory.
We have admitted this transcript under objection, and if it 5s not competent for any reason, it is our duty to exclude it.
It purports to contain an application by the plaintiff for letters of administration upon the estate of Ezra S. Dodd, who was her husband — and issuing of the letters — giving of bond— its approval — appraisement of the personal estate, which appears to include this mortgage — the giving of notice of the application and appraisement — the final account and its confirmation — and it purports to contain a showing that the expenses •of last sickness and funeral, and costs of administration had been paid; also, an order of distribution made on April 9,1891, wherein it was found that, as widow of the decedent, she was 'entitled to hold the mortgage in controversy as exempt property, and an order turning the same over to her as her own property.
The transcript bears the name of J. C. Poster as judge of the probate court of Logan county, Oklahoma,under date of March 1, 1897, and also bears the seal of that court.
The certificate of the judge to the transcript recites the ■name of the territory and county, and certifies that he, J. G. Foster, “is judge and keeper of the records of the probate ■court of Logan county, and that he is the successor in office of L. S. Maxwell, judge, before whom the above and foregoing proceedings were had, and that the above and foregoing is a full and correct copy of the petition for letters of administration of the estate of Ezra S. Dodd, deceased — the order fixing •the time and place of hearing said petition and directing ■notice thereof; the order appointing Anna C. Dodd administratrix of said estate and her bond and oath as such — the letters of administration, inventory and final report of said Anna C. Dodd as such administratrix, and of the order and •decree of said court approving and confirming said final report and discharging said administratrix, as the same now appear ■on file and of record in said court; also the appointment of A. E. Grissel as agent of the administratrix”.
“In testimony whereof I have hereunto set my hand and affixed the seal of said court at the courthouse in the city of ■Guthrie in said Logan county, this first day of March, 1897.”
The name and seal follow.
Attached to the transcript is the following certificate of the ■county clerk:’
Territory of Oklahoma, County of Logan, ss.
“I, R. Emmet Stewart, county clerk of said Logan county, do hereby certify that J. C. Poster, who has given the preceding certificate, was, at the time of so doing, sole presiding judge of said court, duly commissioned and sworn, to all of whose acts as such, full faith and credit ought to be given.
“Witness my hand and the official seal at Guthrie in said county this first day of March, A D. 1897.
“R. Emmet Stewart,
(Seal.) County Clerk.”
*723 We know not what, if any, connection he may have with the prohate court, because the judge of that court certifies that he is the keeper of the records of that court.
There is also attached a certificate of the secretary of the territory in the following words:
“I do hereby certify that J. C. Foster was judge of the probate court in and for the county of Logan, territory of Oklahoma, duly elected, qualified and sworn to fill such office as successor to S. S. Lawrence, and that said J. O. Foster was probate judge in and for above named county and territory afc the date of signing certificate attached to the annexed instrument, and that his signature thereto is his true signature, andi that the seal of his court is entitled to full faith and credit,, being a county record under the statutes of Oklahoma Territory. I further certify that R. Emmet Stewart is county clerk, in and for Logan county, Oklahoma Tyerritory, and that the-signature to certificate attached to annexed instrument is the-true signature of R. Emmet Stewart, and full faith and credit, should be given the same.
“In testimony whereof I have hereunto set my hand am® affixed the great seal of the territory the date first above written., “Thomas J. Lowe,
“Secretary of Oklahoma Territory.”
- The essence of the latter certificate is that both the probate; judge and county clerk are the persons they represent themselves to be, and that their signatures to the transcript are-genuine.
The three certificates quoted are the only authentication of the transcript; and are they sufficient in form and substance-to entitle it to faith and credit in the courts of this state?
As a rule of pleading a "judgment of a court, it is laid down, in section 5090, Revised Statutes, and reads:
“In pleading a judgment or other determination of a court* or an officer of special jurisdiction, it shall be sufficient state that such judgment or determination was duly given or made; and if such allegation be controverted, the party pleading must establish, on the trial, the facts conferring jurisdiction.”
The petition in this case does not aver that the judgment or determination relied on for title to the mortgage “was duly given or made.” Nor do we find in either of the certificates-any such words or their equivalent. The section quoted materially abbreviates the averments of a petition, pleading a judgment or determination, but it requires the fact to appear that it. was “duly given or made.” And if this should be-averred in the petition, it must be proved on the trial if the-allegation is controverted. We have seen that the . answer la-this case does controvert the judgment and order relied on. Therefore it became necessary to establish on the trial “the-facts conferring jurisdiction.” This section applies to any judgment, and no more liberal rule prevails as to judgment* and proceedings from courts of another state or territory.
But we have a federal statute which prescribes the manner of authentication of such records, and it is section 905 of the-laws of the United States, as follows:
“* * * The records and judicial proceedings of tb# court* of any state or territory, or of any such country, shall be¡ *724 proved or admitted in any other court within the United States, by the attestation of the clerk and the seal of the court Annexed if there be a seal, together with a certificate of’ the judge, chief justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which •they are taken.”
' ;.So we have thus before us, the law which on the issues joined in this case, requires two things to be established:
First — Where, as in the case at bar, the allegation of jurisdiction and a judgment of the probate court in Oklahoma is controverted, the facts conferring jurisdiction must be established a,6 the trial.
Second — The attestation of the record of such judgment, order or proceedings relied on must contain “a certificate that the said attestation is in due form,” in order to be admitted in the courts of this state. Such seems to be the condition prescribed in the federal statute above quoted.
On the first question we have no evidence whatever. We -have not been informed what, if any, statute in force in Oklahoma, confers upon probate courts jurisdiction over the settlement of estates. Nor do we know from any evidence that the law of that territory provides for such a court. There has not been a single fact put in evidence tending to prove “or establish” the “jurisdiction” of that court, or even its existence.
There are some authorities which hold that courts of general •or superior jurisdiction are presumed to act by right and within the authority conferred upon them by law, and “that their judgments and decrees are in all cases of at least prima facie validity,” and that as to such judgment or decree, the plaintiff is not required to assert any jurisdictional facts. See Freeman on Judgments, section 452.
On this point the adjudicated cases are not in harmony, but .we incline to favor the rule as a just and reasonable one.
But from our common knowledge, probate courts are not -courts of either general or superior jurisdiction. % In Ohio, the probate is a court of record, but not one of general or superior jurisdiction, but it is a court of special and inferior jurisdiction.
And in basing an action or proof of title to property on the orders and judgments of such a court in another state or territory, jurisdictional facts must appear, in order that the record of such judgment or order be received as evidence. If jurisdiction be once established, all else may be presumed to b© correct, but jurisdiction is always open to inquiry. Freeman on Judgments, section 454; Pennywit v. Foote, 27 Ohio St., 600; Sipes v. Whitney, 30 Ohio St., 69; Spier v. Corill, 33 Ohio St., 236.
The record of the probate court of Oklahoma offered here is not supported by the necessary facts as to the law of that territory and the jurisdiction of that court.
And there is a fatal omission in the attestation of the record. - It does not appear in the certificate of the judg6 of probate -court, or in any other certificate, that the “attestation is in •due form,” as required by section 905 of the federal statute. And until such fact is certified, or otherwise proved by com *725 petent evidence, the transcript of the record is not entitled to “such faith and credit” as it had by law or usage in the courts of the state from which it has been taken.
E. W. Tolerton & W. W. Campbell, for Plaintiff.
M. Donnelly, for Defendant.
See Freeman on Judgments, sections 412, 413.
Without quoting from these sections, we refer to section 506 of volume I, Greebleaf on Evidence. “Under these provisions it has been held, that the attestation of the coj>y must be according to the form used in the state from which the record comes, and that it must be certified to be so, by the presiding judge of the same court, the certificate of the clerk to that effect being insufficient. ” * * * And see cases cited under this section.
The plaintiff to prove her title to the mortgage in suit offers the transcript of the record of the probate court in Oklahoma Territory. It is not a court which we judicially recognize as a court of general or superior jurisdiction, but on the contrary, it is presumed to be of inferior jurisdiction.
What is the law of that territory as to the jurisdiction of the probate court? We know not. There was no proof offered on the subject. We cannot take judicial notice of the laws of another state. They must be proved, when denied.
Again, as we have observed, the attestation lacks the essential element in the certificate attached to the record “that said attestation is in due form.”
These objections to the record offered are not technical, they go to the very substance and essence of the right to introduce it, and until it has the essential qualities stated, it is not entitled to “full faith and credit” in the courts of this state.
Therefore the plaintiff fails to show title to the mortgage, and her petition is dismissed at her costs.