**In re Roy E. HEGER, Debtor.**

**Bankruptcy No. 3–90–04811.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Oct. 21, 1991.

Steven R. Fansler, Chapter 12 Trustee, West Liberty, Ohio.

## DECISION AND ORDER ON LIEN VALIDITY AND PRIORITY

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court upon the objections to the confirmation of the plan of the debtor in possession. With one exception, Butler Landmark, Inc.'s ("Butler Landmark") objections have been resolved by the debtor in possession. The exception is Butler Landmark's claim to a first and best lien in collateral described in its financing statement filed September 18, 1990, in the Recorder's Office of Preble County, Ohio. The debtor's amended plan of reorganization acknowledged a security interest to United States of America, Farmer's Home Administration ("FmHA") and to Butler Landmark. FmHA claims the first and best lien upon the same collateral as does Butler Landmark.

Roy E. Heger, the debtor in possession, borrowed $160,000 from Farmer's Home Administration by a note and mortgage upon his land. On July 5, 1985, he borrowed additional funds from Farmer's Home Administration, which placed a financing statement on record July 1, 1985, covering crops, livestock, other farm products, farm and other equipment, supplies, inventories, accounts and contract rights. The July 1, 1985 financing statement was numbered 1928 at the Preble County Recorder's Office (USA Ex. 1, page 60). It is undisputed that this financing statement fully described the land on which the growing crops were located in compliance with Ohio Revised Code Section 1309.39(A), (B) and (E). The financing statement lapsed on July 1, 1990. On August 1, 1990 Farmer's Home Administration filed financing statement # 10709 (USA Exhibit 1, page 61) which purported to cover crops, livestock, other farm products, farm and other equipment, supplies, inventory, accounts and contract rights. In item 3 of that financing statement, for description of the real estate on which the security interest

Roger E. Luring, Troy, Ohio, for debtor, Miller & Luring Co., LPA.

Richard T. Ricketts, Pickerington, Ohio, for Richard T. Ricketts Co., LPA.

Ray A. Cox, Dayton, Ohio, for Butler Landmark, Inc.

existed in crops growing or to be grown, the following statement appears:

This financing statement is signed by the secured party only and covers the collateral in which a perfected security interest was previously secured by financing statement number 1928 which lapsed on July 1, 1990.

On September 18, 1990 Butler Landmark filed financing statement # 10859 (Exhibit C), that complied with all of the requirements of the Ohio statute, and that covered crops, growing crops and crops to be grown and fixtures, equipment, livestock, farm products and personal property.

The court has reviewed exhibits USA 1, and Butler A, B, C, and D filed in the case and has considered the testimony of Sonya Kuhlman, employee of Butler Landmark, in determining the facts of the case. Before filing the financing statement on September 18, 1990 (Exhibit C), the Butler Landmark employee made a search of the records in the Preble County Recorder's Office. She found the August 1, 1990 FmHA financing statement # 10709. She concluded it was ineffective, stating she found no financing statement that had not lapsed. Butler Landmark had advanced loan funds of more than $44,258 to the debtor from January through July, 1990 for crop expenses as shown by Butler's Exhibit A. In August, Butler Landmark loaned an additional $4,380. After filing its financing statement on September 18, 1990 Butler Landmark continued to advance loan funds for the farm expenses until October 29, 1990. Throughout 1990 the debtor made substantial payments to Butler Landmark, as a good customer must do. The total unpaid crop money due was $19,806.01. In addition to the financing statement, Roy E. Heger signed a note (Exhibit B) and mortgage (Exhibit D) for $17,000 to Butler Landmark on September 18, 1991. The mortgage attached to 120 acres in Somers Township, Preble County, Ohio.

Butler Landmark questioned the validity of the financing statement filed by FmHA on August 1, 1990 alleging it does not comply with subsections (A) and (E) of Ohio Revised Code 1309.39.

FmHA contends that its financing statement # 10709 filed August 1, 1990 complies with subsection (B) of Ohio Revised Code 1309.39 and only leaves a question concerning subparagraph (E). The pertinent sections of Ohio Revised Code § 1309.39 are (A), (B) & (E) which provide as follows:

(A) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown, timber to be cut, or minerals or the like, including oil and gas, or accounts subject to division (E) of section 1309.03 of the Revised Code, or when the financing statement is filed as a fixture filing pursuant to section 1309.32 of the Revised Code and the collateral is goods which are or are to become fixtures, the statement must also comply with division (E) of this section. A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by the debtor. A carbon, photographic, or other reproduction of a security agreement or a financing statement is sufficient as a financing statement if the security agreement so provides or if the original has been filed in this state.

(B) A financing statement which *otherwise* complies with division (A) of this section is sufficient when it is signed by the secured party instead of the debtor if it is filed to perfect a security interest in:

(1) collateral already subject to a security interest in another jurisdiction when it is brought into this state or when the debtor's location is changed to this state. Such a financing statement must state that the collateral was brought into this state or that the debtor's location

was changed to this state under such circumstances; or

(2) proceeds under section 1309.25 of the Revised Code if the security interest in the original collateral was perfected. Such a financing statement must describe the original collateral; or

(3) *collateral as to which the filing has lapsed;* or

(4) collateral acquired after a change of name, identity, or corporate structure of the debtor under division (G) of this section.

(E) A financing statement covering crops growing or to be grown or timber to be cut or minerals or the like, including oil and gas, or accounts subject to division (E) of section 1309.03 of the Revised Code, or a financing statement filed as a fixture filing pursuant to section 1309.32 of the Revised Code must show that it covers this type of collateral, must recite that it is to be indexed in the real estate records of the county in which the real estate is situated, and the financing statement must contain a description of the real estate sufficient if it were contained in a mortgage of the real estate to give constructive notice of the mortgage under the law of this state. If the debtor does not have an interest of record in the real estate, the financing statement must show the name of a record owner or record lessee. (Italics added).

Ohio Revised Code § 1309.39(A), (B) and (E).

Butler Landmark contends that the August 1, 1990 financing statement of FmHA is ineffective to cover growing crops because it fails to meet the requirement of subsection (E) to recite that the real estate records of the county be indexed and fails to contain the real estate description in the financing statement. Butler Landmark contends that the second financing statement was for a new security interest, not a continuing interest. As a new filing, Butler Landmark contends the financing statement must comply with all of the requirements of 1309.39(A), (B) & (E). Butler Landmark contends the financing statement is defective in that (1) it was not signed by the debtor, (2) contains no real estate description, (3) nor does it recite that it was indexed in the real estate records.

FmHA contends that the August 1, 1990 financing statement # 10709 complies with Ohio Revised Code § 1309.39 by the reference in the financing statement that "this financing statement is signed by the secured party only and covers the collateral in which a perfected security interest was previously secured by financing statement number 1928 which lapsed on July 1, 1990."

■ This decision is based upon interpretation of the provisions of Ohio Revised Code § 1309.39(A), (B), and (E), known as Section 9–402 of Uniform Commercial Code ("U.C.C.") and their application to the facts of this matter. In such interpretation the court must consider the policy behind this Ohio section of the Uniform Commercial Code and the purpose of such code section. *Uniform Commercial Code,* 3rd edition, White and Summers, is a valuable aid to this consideration. Section 24–18, page 380, of the treatise reads:

The theory of notice filing is that a reasonabl[y] diligent searcher will be put on notice not only of a security interest, but also on notice of what collateral is covered by the security agreement. (citing *Nolin Production Credit Ass'n. v. Canmer Deposit Bank,* 726 S.W.2d 693, 2 UCC Rep.Serv.2d 636 (Ky.App.1986) Inquiry Test). The treatise continues,

Thus, no reported case upholds total omission of a description from the financing statement. Such a financing statement fails in one of its fundamental notice functions. Of course, where the financing statement includes a valid description, it does not follow necessarily that the collateral described are in fact subject to a security interest. Further inquiry is usually necessary. On the other hand, the reasonable searcher may safely conclude that collateral not described in the financing statement is not encumbered, at least not by this creditor. ... Numerous cases generally uphold, as not overbroad, descriptions formulated in terms of Code categories: accounts, general intangibles, consumer goods, equip-

ment, farm products, inventory, and so on.

■ The *Nolin Production Credit* case stands for the "inquiry test" to determine the sufficiency of a description of collateral in a financing statement. A financing statement is sufficient if it puts subsequent creditors on notice so that, aided by inquiry, the creditors may reasonably identify the collateral involved. The "inquiry test" is a valid means to determine the collateral and the description of real estate if the financing statement identifies by reference a document describing the land upon which the growing crops are located or are to be grown.

In the instant case Butler Landmark's employee in her search, found the financing statement of August 1, 1990, and concluded that it was invalid. Her conclusion was based upon a strict technical view which unduly restricts the general policy of the Uniform Commercial Code advocating notice filing and "reasonable inquiry" by a creditor who searches for a recorded financing statement.

Butler Landmark was not misled nor did it detrimentally rely upon the recorded financing statements of FmHA. Rather, Butler Landmark recorded its financing statement in September 1990 for its antecedent loans to the debtor to take a secured position in collateral. Butler Landmark takes too narrow a view of the "reasonable inquiry" intended by the U.C.C. The Butler Landmark employee apparently stopped searching when she read "lapsed" on financing statement # 10709. Financing Statement # 10709 clearly referred any reasonably diligent searcher to financing statement # 1928 in the County Recorder's Office for the collateral description. The defects suggested by Butler Landmark are explained if a searcher follows the reference to recorded document # 1928 which describes the collateral, the real estate description and real estate record indexing details.

The August 1, 1990 financing statement # 10709 recites that the collateral covered was described in the financing statement # 1928. The unquestioned financing statement # 1928 complies with Ohio Revised Code § 1309.39(A) and (E). Examination of financing statement # 1928 would notify the searcher of the collateral and the description of the land on which the collateral and crops grew or were to be grown. The second financing statement # 10709 filed August 1, 1990, incorporated by reference the statement # 1928 which had lapsed July 1, 1990.

Although the first financing statement had lapsed, FmHA followed the provisions of subsection (B)(3) of Ohio Revised Code 1309.39 which provides that a statement may be signed by only the secured party if it is filed to perfect a security interest in:

(3) collateral as to which the filing has lapsed.

The use of the technique of incorporation by reference is acceptable to provide more "full" detail. The use of another recorded document to provide a "full" description of real estate is common practice, long recognized in Ohio law. *Dodd v. Groll*, 8 Ohio Cir. Dec. 334 (Henry Cir.Ct.1898), aff'd 63 Ohio St. 557 (1900).

FmHA's recorded financing statement # 1928 of July 1, 1985, contained a description of the collateral which included crops growing or to be grown on the following described real estate:

| Owner | Approx. No. Acres | County and State | Description |
|---|---|---|---|
| Roy E. Heger | 120 | Preble, Oh. | Camden–Darrtown Rd. 4 mi. SW Camden, Somers Twp. S32, T6N, R2E |

as more fully described in Deed Book 317, Page 166 in the records of the Preble County Recorder.

Gerald Kalkbrenner    97    Butler, Oh.    Oren Rd., 2 mi. West
Somerville S35, T5,
R2E in Milford Twp.

as more fully described in Deed Book ____, Page ____ in the records of the Butler County Recorder in Butler County, Ohio.

---

The collateral described in financing statement # 1928 is stated to be the collateral covered by the financing statement # 10709. By that reference the recorded document # 10709 is sufficient notice to creditors that FmHA has a security interest in such collateral. The reference is sufficient to meet the requirements of Ohio Revised Code § 1309.39(E).

■ Butler Landmark's security interest is not supported in its claim for $19,806.01 under the provisions of Ohio Revised Code § 1309.31(B). That statute provides:

(B) A perfected security interest in crops for new value given to enable the debtor to produce the crops during the production season and given not more than three months before the crops become growing crops by planting or otherwise takes priority over an earlier perfected security interest to the extent that such earlier interest secures obligations due more than six months before the crops become growing crops by planting or otherwise, even though the person giving new value had knowledge of the earlier security interest.

Ohio Revised Code § 1309.31(B).

■ A security interest for new value given to enable a debtor to produce crops takes priority only over obligations more than six months *overdue* at the time the crops become growing crops. *U.S. v. Minster Farmers Cooperative Exchange, Inc.,* 430 F.Supp. 566, 570 (N.D.Ohio 1977).

The promissory notes in U.S.A. Exhibit 1 at pages 9, 15, 21, 27, 30, 38 and 40 provide for installments due on January 1, 1990 which total more than $34,000. The crops were planted in the spring of 1990, a period less than six months after the installments were due to FmHA. Butler Landmark's security interest is not entitled to priority under section 1309.31(B).

Applying the law to these facts the court is compelled to rule that FmHA reperfected its security interest on August 1, 1990, by filing financing statement # 10709 incorporating by reference the recorded financing statement # 1928. The FmHA financing statement filed August 1, 1990 is entitled to priority over Butler Landmark's financing statement filed September 18, 1990.