**In re Joseph James BAILEY, Jr., Sharon Lee Bailey, Debtors.**

**Bankruptcy No. 97–43308–11.**

United States Bankruptcy Court, D. Kansas, Topeka Division.

Dec. 11, 1998.

---

John Lewis, Jr., Levy and Craig, P.C., Kansas City, MO, for Farmers State Bank.

Gary H. Hanson, Stumbo, Hanson & Hendricks, L.L.P., Topeka, KS, for Debtors.

Dale L. Somers, Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, Topeka, KS, for Unsecured Creditors Committee.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Chief Judge.

This matter is before the Court for resolution of an objection to the secured status of a creditor's claim. The creditor is the Farmers State Bank ("the Bank"), the debtors filed the objection, and the Unsecured Creditors Committee ("the Committee") is supporting the objection. The Bank appears by counsel John Lewis, Jr., of Levy and Craig, P.C., of Kansas City, Missouri. The debtors appear by counsel Gary H. Hanson of Stumbo, Hanson & Hendricks, L.L.P., of Topeka, Kansas. The Committee appears by counsel Dale L. Somers of Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, of Topeka Kansas. The Court orally informed the parties of its decision at a hearing on November 6, 1998, and is now issuing this Memorandum to formalize that decision.

As indicated, the Bank filed a secured claim in this chapter 11 case. The debtors objected that the Bank's security interest is not perfected and so may be avoided pursuant to 11 U.S.C.A. § 544. Though this matter has not been designated as an adversary proceeding, the parties have filed briefs about the Bank's secured status, and have submitted the matter for decision based on uncontroverted facts disclosed by various pleadings, including the Bank's proof of claim and its attachments, and affidavits attached to the briefs. It has therefore become an adversary proceeding, and the Clerk of the Court will be directed to designate it as such. *See* Fed.R.Bankr.P. 3007.

## FACTS

The debtors filed their chapter 11 bankruptcy petition on April 13, 1998. On May 18, the Bank filed a proof of claim for $753,582.50, asserting the claim is secured by collateral identified in attached documents. Those documents include copies of a number of notes, security agreements and financing statements. The notes and a summary indicate the debtors had a large loan that was renewed eight times and a small one that was renewed once; the last renewals for both occurred on April 24, 1995. With each renewal, the Bank assigned new numbers to the loans, and the Court will refer to these numbers as note numbers rather than loan numbers. The debtors signed two notes when they last renewed, note number 8001314 and note number 8001315. The documents attached to the proof of claim include only the first page of each of these two-page notes. The Bank had calculated interest through November 26, 1997, for each note. On number 8001314, the debtors then owed $580,000 plus $158,006.30 in interest, and on number 8001315, they owed $12,241.35 plus $3,334.85 in interest, bringing the total to the amount the Bank asserted on the proof of claim form. The summary attached to the proof of claim indicated interest was accruing at $170.37 per day after November 26, but the total placed on the claim form did not include any interest after that date. Note 8001314 and note 8001315 both contain this statement: "This loan is secured by: security

agreement dated 12/19/91; 11/30/90." No other language in the portions of the notes supplied to the Court refers to any other security agreement or otherwise indicates that the notes are secured. While three security agreements are attached to the proof of claim, none of them is dated December 19, 1991, or November 30, 1990.

Like notes 8001314 and 8001315, the copies of the security agreements and the other notes that were attached to the Bank's proof of claim include only one page although each of them contains one or more references to a second page. The original note for the large loan refers to two of the three security agreements attached to the proof of claim. The first renewal note refers only to the security agreement dated 11/30/90. The second renewal note refers to at least one of the three security agreements attached to the proof of claim, to the 12/19/91 and 11/30/90 agreements, and to two older security agreements. All the other renewal notes for the large loan state only that they are secured by the 12/19/91 and 11/30/90 security agreements, as do the original and renewal note for the small loan. Several of the early notes for the large loan have a boxed section in which security for the note is identified. At least one and perhaps two of them have a smaller box within this section checked so that the following language applies: "If checked, no agreement was signed today securing this note. (This section is for your internal use. It may not include every agreement or item of collateral securing this note. You will not lose any security by omitting it from this section.)" The notes refer to the debtors as "I" or "we" and the Bank as "you" and the apparent meaning of this language would indicate that the debtors were making the statements, yet the Bank's president, not the debtors, signed on the bottom border of the box. In any event, the boxed section does not appear on the last two notes the debtors signed for the large loan or on either note for the small loan.

On November 6, 1989, the Bank properly filed a financing statement with the Kansas Secretary of State that contained a lengthy description of its collateral. The Secretary of State assigned that financing statement an identification number, 1499944, and it lapsed five years from the date it was filed. On February 9, 1996, about 15 months after that statement had lapsed, the Bank filed a new financing statement. This financing statement was submitted without the debtors' signatures, and to explain this omission, as required by the form, the Bank marked a box for "Collateral as to which the filing has lapsed." In the blank for describing its collateral, the Bank inserted, "THIS STATEMENT REFERS TO ORIGINAL FINANCING STATEMENT #1499944 FILED (DATE) 11–6–89 WITH SECRETARY OF STATE."

As the Bank concedes, a normal request for the Secretary of State to search its UCC filings by the debtors' names and their social security numbers produced the Bank's February 9, 1996, financing statement, but not its November 6, 1989, one. No other documents were attached to the February 1996 financing statement. In August 1998, a searcher was able to obtain the earlier financing statement by asking the Secretary of State specifically for financing statement #1499944. A normal search by debtor name and social security number, however, will not turn up a financing statement that lapsed more than one year before the search is done.

## DISCUSSION AND CONCLUSIONS

 The debtors and the Committee first contend that the Bank has not shown that it currently has a lien on any of the debtors' property. They assert that the Bank has not produced the security agreements that purportedly secure the notes in effect when the debtors filed for bankruptcy, and so has not presented any evidence showing that its claim is presently secured. The Bank did not address this argument in its brief. The Bank's claim is based on promissory notes numbered 8001314 and 8001315, both dated April 24, 1995. Each note states that it is secured by security agreements dated November 30, 1990, and December 19, 1991, and nothing in either note (or at least in the portion of it presented to the Court) indicates it is secured by any other security agreement. No security agreement executed on either of those dates was attached to the

Bank's claim or furnished with any other pleading. Because the Bank has failed to produce the security agreements referred to in the latest notes and has failed to produce any evidence showing that the latest notes are secured by the security agreements that have been produced, it has failed to supply prima facie evidence that its claim is secured by a lien on any of the debtors' property. *See* Fed.R.Bankr.P. 3001(d) & (f). Consequently, the Court must sustain the objection to the Bank's assertion that its claim is secured. *See* 11 U.S.C.A. § 506(a).

The Court could end its opinion here but will not since orders allowing or disallowing claims may be reconsidered for cause. *See* 11 U.S.C.A. § 502(j); Fed.R.Bankr.P. 3008. Instead, the Court will rule on the arguments made by the debtors and the Committee that, even if it exists, the Bank's asserted security interest in the debtors' property is not perfected and so may be avoided pursuant to 11 U.S.C.A. § 544(a)(1) or (2).

Several provisions of the Kansas Uniform Commercial Code provide the rules for determining whether the Bank's interest is perfected. K.S.A. 84–9–403(2) provides that a financing statement covering the kind of debtors and collateral involved here "is effective for a period of five years from the date of filing," but that its effectiveness lapses on "the expiration of the five-year period unless a continuation statement is filed prior to the lapse." K.S.A. 84–9–403(3) provides that the "filing officer may remove a lapsed statement from the files and destroy it immediately if the filing officer has retained a microfilm or other photographic record, or in other cases after one year after the lapse." The 1996 Kansas Comment to 84–9–403(3) states that the "subsection gives the filing officer the authorization to remove and destroy lapsed filings under certain circumstances." K.S.A. 84–9–402(1) provides that a financing statement must "contain a statement indicating the types, or describing the items, of collateral.... [Such a statement] is adequate if it generally identifies goods by one or more of the classifications listed in K.S.A. 84–9–109, and amendments thereto, or generally identifies other collateral by one or more of the following classifications: fixtures, documents,

instruments, general intangibles, chattel paper or accounts." The classifications listed in 84–9–109 are "consumer goods," "equipment," "farm products," and "inventory." Although the debtor must ordinarily sign a financing statement, K.S.A. 84–9–402(2)(c) provides that the secured party's signature can be substituted for the debtor's if the financing statement is filed to perfect a security interest in "collateral as to which the filing has lapsed." K.S.A. 84–9–402(8) provides that a "financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." The Kansas Secretary of State has not adopted any regulation supplementing any of these provisions.

■ The debtors and the Committee argue the February 9, 1996, financing statement is ineffective because it does not contain the debtors' signatures. This contention is wrong. As indicated above, K.S.A. 84–9–402(2)(c) permitted the Bank's signature to be substituted for the debtors' because the Bank was filing the financing statement to perfect a security interest in collateral as to which a prior financing statement between the same parties had lapsed.

The February 1996 financing statement that the Bank filed contained no actual description of its collateral but instead said the statement "refer[red] to original financing statement # 1499944 filed (date) 11–6–89." Although this language is not clear, the Court believes it must be read to imply that the actual description of the Bank's collateral is that found on statement # 1499944. A normal search of the UCC filings using the debtors' names and social security numbers obtained the new financing statement, but not statement # 1499944. Only a subsequent request specifically for statement # 1499944 obtained it. The Bank contends the fact its lapsed filing actually was located in this manner means its security interest was properly perfected by the new financing statement. The Court believes, however, that the fact the Secretary of State could still find statement # 1499944 more than a year after it lapsed does not answer the question whether the new statement's reference to statement

\# 1499944 satisfied the requirements of the Kansas UCC for perfecting the Bank's lien.

The Bank suggests that K.S.A. 84–9–403(3) is ambiguous and can be read to permit the Secretary of State to destroy lapsed financing statements only after making a microfilm or other photographic record of them. The Court cannot agree. The provision establishes two categories of lapsed financing statements: those that may be destroyed immediately, and those that may be destroyed after one year after they have lapsed. Before a lapsed statement may be destroyed immediately, some photographic record of it must be made. If no photographic record is made, the statement cannot be destroyed until after one year after it lapsed. The only ambiguity the Court can perceive is whether a photographic record, if one is made, must be kept forever or may itself be destroyed after one year after the recorded statement lapsed. But since the original document itself could be destroyed after one year after lapse if no photographic record of it had been made, the only reasonable interpretation is that the photographic record can also be destroyed after one year. This interpretation also harmonizes with the Official UCC Comment to 84–9–403(3) that: "The theory of this Article is that the public files of financing statements are self-clearing, because the filing officer may automatically discard each financing statement after a period of five years plus the year after lapse required by subsection (3), unless a continuation statement is filed, or the financing statement is still effective under subsection (6)." Since the Secretary of State could have destroyed statement \# 1499944 (and any photographic record of it) at any time after one year after it lapsed, and could still destroy it at any time, the question becomes whether the statement could nevertheless effectively supplement the Bank's new financing statement simply because the Secretary still had the old statement more than three years after it lapsed.

This appears to be a case of first impression on the facts presented. The parties have cited a number of cases that involve somewhat similar facts, but all of them are distinguishable. Some reach conflicting results, and some employ reasoning that this Court finds questionable. Ultimately, they provide little guidance on the question now before the Court.

For example, in *In re H.L. Bennett Co.*, 588 F.2d 389, 391–94 (3rd Cir.1978), the court held that a financing statement that described two creditors' collateral as "[a]ll assets as contained in the security agreement (installment note) executed even date herewith" did not perfect the creditors' security interest, at least where the security agreement was not attached or otherwise publicly filed. The Third Circuit stated in the facts that the security agreement had not been publicly filed, but did not refer to or rely on this fact in explaining its decision.

In *In re Tebbs Construction Co., Inc.*, 39 B.R. 742 (Bankr.E.D.Va.1984), a case involving facts more like those before this Court, the court relied partly on *Bennett* in reaching its decision. The creditor in *Tebbs* had filed a financing statement in 1975 with a copy of its security agreement attached. *Id.* at 744. The parties stipulated that this financing statement lapsed seven years later, in 1982, *id.*, and the opinion does not explain why the standard five-year period did not apply; today, at least, the Virginia UCC has a five-year lapse period, *see* Va.Code Ann. § 8.9–403(2) (Michie 1998). Just over one month after the stipulated lapse date, the creditor filed a new financing statement. 39 B.R. at 744. In relevant part, the collateral description on this statement was "those items of machinery and equipment, with replacements thereof, as set forth in the attached security agreement," but the security agreement was not attached. *Id.* at 745. The financing statement also gave the filing date and the old file number for the 1975 financing statement and indicated that it had lapsed. *Id.* at 746. According to the notes to § 8.9–403 in the Virginia Code Annotated, at the time of the *Tebbs* decision, subdivision (7) of the statute required the filing officer to retain lapsed filings for five years, but in 1990, the time was reduced to one year. *See* Va.Code Ann. § 8.9–403, Notes, References, and Annotations (Michie 1998). Thus, the Virginia filing officer should have had the old financing statement in its active files and indices

when the *Tebbs* court rendered its decision in 1984 whether the statement lapsed after five or seven years. The court ruled the new financing statement was sufficient to perfect the creditor's security interest in the debtor's machinery and equipment. It said "machinery and equipment" were sufficient descriptions under 9–402(1) of the types of collateral, and the incomplete attempt to provide a more specific description did not make the financing statement misleading. 39 B.R. at 746–47. It read the Third Circuit's decision in *Bennett* to approve a collateral description that refers to a publicly-filed document that is not attached to the financing statement but does contain a sufficient collateral description, and held the security agreement attached to the 1975 financing statement was such a document. 39 B.R. at 746, 747–48. Finally, the court concluded the collateral description was not seriously misleading. 39 B.R. at 747–48. Nothing in the decision indicates whether a filing-office search obtained or would have obtained the 1975 financing statement and attached security agreement. Since the Virginia version of 9–403 in effect at the time required lapsed filings to be retained for five years, presumably a search would have obtained them. This Court cannot agree that *Bennett* expressed any view on the question whether a financing statement could be sufficient if it referred to another publicly-filed document to supply required information not contained in the financing statement itself or attachments. The Third Circuit merely indicated such facts were not before it.

Like *Tebbs, In re Heger*, 133 B.R. 612 (Bankr.S.D.Ohio 1991), involved a new financing statement that was filed after a previous one had lapsed, but referred to the old one for required information. The new statement was filed one month after the old one lapsed and described the relevant collateral as crops growing or to be grown. 133 B.R. at 613–14. Instead of directly describing the real estate where the crops were located, though, as required by the Ohio version of 9–402, the new statement contained the following language in the blank for the real estate description: "This financing statement ... covers the collateral in which a perfected security interest was previously secured by

financing statement number 1928 [the number the filing office had assigned to the old statement] which lapsed on July 1, 1990." *Id.* at 614–15. The court held the financing statement was sufficient to perfect the creditor's security interest in the debtor's crops. *Id.* at 615–17. An employee of a competing creditor testified that she had found the new financing statement before her employer filed one and concluded it was ineffective, but found no other financing statement that had not lapsed. *Id.* at 614. The opinion does not indicate whether the employee actually found the earlier statement and concluded it did not effectively supplement the new one, or simply did not find it. In any event, the court held the information included in the real estate description portion of the new financing statement sufficiently directed a reasonably diligent searcher to the old financing statement that it gave the competing creditor notice of the first creditor's security interest, and so perfected that interest. *Id.* at 616–17. It appears from the case number assigned to the case that the debtor filed for bankruptcy in the same year as the first creditor's old financing statement lapsed, so the statement should still have been in the active records and indices since Ohio follows the general rule of requiring the filing officer to retain lapsed filings for one year. *See* Ohio Rev.Code Ann. § 1309.40(C) (Banks–Baldwin 1998).

Two other cases the parties cited involved financing statements that indicated an attached document contained the collateral description but had no such document attached. In *In re Antekeier*, 6 UCC Rep. Serv. (Callaghan & Co.) 1027, 1969 WL 11086 (Bankr. W.D.Mich.1969), the financing statement described the collateral as "See Attached Description of Property," but had no description of property attached. Applying the Michigan version of the UCC, the court held that this mistake was not a "minor error" that could be excused under 9–402(5) because it did not indicate the types or describe the items of collateral as required by 9–402(1) and did not reasonably identify what was described as required by 9–110. 6 UCC Rep. Serv. at 1030, 1969 WL 11086. The relevant portions of these three Michigan UCC provi-

sions, as quoted in the opinion, were equivalent to K.S.A. 84–9–402(8), 84–9–402(1), and 84–9–110. Rejecting the creditor's argument that the financing statement gave interested parties notice that they should contact the creditor to find out what collateral was covered, the court said to accept the financing statement as sufficient would nullify the requirements of 9–402(1) and 9–110, and instead require a creditor to include on its financing statement only its name, address, and signature, and the debtor's name, address, and signature. *Id.* On similar facts, a different court held the filing of a creditor named Proctor & Schwartz, Inc., was sufficient. *In re Bowser*, 1 UCC Rep. Serv. (Callaghan & Co.) 626, 1961 WL 8679 (Bankr. W.D.Pa.1961). The original of the conditional sales contract at issue there said "See Attached" in the space for the collateral to be described and had an attached sheet with a full description of the collateral; when copies of the contract were filed in the required offices, however, the attachment was inadvertently omitted. The court also noted that the creditor had labeled the equipment serving as its collateral with metal plates on which it had stamped "PROCTOR," and that the filed portion of the contract had Proctor's full name and address. The court concluded that: "Any interested party finding said conditional sales contract would be on notice that the schedule describing the subject equipment was omitted inadvertently and could obtain the desired information by inquiry from the creditor, especially when an inspection of the premises of the debtor would reveal said creditor's name in the contracted form 'PROCTOR' prominently affixed to the goods in question." The court did not explain how the creditor's filing satisfied the requirement in 9–402(1) that the financing statement describe the collateral by type or item. This Court agrees with the *Antekeier* court's view that accepting a filing like that in *Bowser* nullifies the collateral description requirements of 9–402(1) and 9–110.

Except as noted in summarizing these decisions, the Court finds nothing significant in them to quarrel with. However, none of them involved the question of the sufficiency of a new financing statement that could be sufficient only through its reference to a lapsed financing statement that the filing officer could already have destroyed and could still destroy at any time. The Court believes the following properly explains the function of the collateral description in a financing statement:

> The theory of notice filing is that a reasonable, diligent searcher will be put on notice not only of a security interest but also on notice of what collateral is covered by the security agreement. Thus, no reported case upholds total omission of a description from the financing statement. Such a financing statement fails in one of its fundamental notice functions. Of course, it does not follow necessarily that the collateral described is subject to a security interest. Further inquiry is usually necessary. On the other hand, the reasonable searcher may safely conclude that collateral not described in the financing statement is not encumbered, at least not by this creditor.

James J. White & Robert S. Summers, *Uniform Commercial Code* § 22–14(d), p. 799 (4th ed.1995). The last sentence highlights a key purpose not recognized by the *Bowser* court: to enable a subsequent potential creditor to determine whether collateral the debtor is offering to pledge is *not* subject to a previously perfected security interest. If the collateral is not described in any filed financing statement, the potential creditor should not need to make any further inquiry. The creditor needs to make further inquiry about a potential perfected security interest only if the collateral is described in another party's prior financing statement, and then only if the creditor is still considering accepting that collateral as security from the debtor.

With this function in mind, the Court will consider the notice the Bank provided to a subsequent creditor in this case. K.S.A. 84–9–403(3) allows a lapsed filing to be removed from the public records and destroyed one year after the date it lapsed. No regulation supplements this statute. Therefore, no system for retaining lapsed financing statements beyond one year after lapse binds the Secretary of State and his or her employees. The fact statement # 1499944 remained in the

Secretary's records was the result of either happenstance, the whim of a filing clerk, or an internal policy that the Secretary could change at any time without public notice or legislative action. Since a financing statement that lapsed more than one year ago may be removed and destroyed and there is no mandatory system for it to be retained, it cannot be considered to be part of the official records that must be searched. In this case, statement # 1499944 had been removed from the Secretary's current indices and records. It could be discovered, as it was, only from an unofficial cache retained without a statutory or regulatory system, and only through an unusual, secondary search outside of the current official records maintained by the Secretary of State. It is one thing for such a search to be necessary to determine whether collateral that is identified or described is actually covered by a security interest; it is quite another for it to be necessary to determine whether any collateral at all is covered.

K.S.A. 84–9–403(3) also directs the Secretary to "so arrange matters by physical annexation of financing statements to continuation statements or other related filings, or by other means, that if the filing officer physically destroys the financing statements of a period more than five years past, those which have been continued by a continuation statement or which are still effective under subsection (6) shall be retained." It is unclear whether the Secretary would have been required to attach statement # 1499944 to the new financing statement if the Bank had filed it before the end of the one-year lapse period. However, since the Secretary was authorized to destroy statement # 1499944 before the Bank filed its new financing statement, the Court believes that the Secretary was not obliged to attach the old statement to the new one. The Official UCC Comment supports this view by saying that "a person searching the files need not go back past this five years plus one year; and if the indices are arranged by years, he has a limited and defined search problem. The section asks filing officers to attach financing statements whose life has been continued by continuation statements to the latter statements, so that anything contained in the files of old years can be discarded."

■ The Court concludes that the Bank's claim is unperfected. The Bank did not include in its new financing statement a description of its collateral, as required by K.S.A. 84–9–402(1), but merely referred to its lapsed financing statement, at best implying that document contained the necessary description. The Secretary of State was authorized to destroy the lapsed financing statement several months before the Bank filed the new financing statement, was not required to attach it to the new statement, and of course could still destroy it at any time. By the time one of the parties performed a UCC search, the lapsed statement had been removed from the active public records and search indices, and was not disclosed by a search based on the debtors' names and Social Security numbers. The Court is convinced an attempt to supply information by referring to a document that is no longer included in the Secretary of State's active public records and search indices, and that might be destroyed at any time is not sufficient to comply with the requirements of 84–9–402(1). Under the Uniform Commercial Code, inquiry directed to the creditor identified in the documents obtained by a search of the public records or directed to expired records is required only when the active public records indicate the creditor has a security interest that does cover identified or described collateral, and the searcher wants to find out whether the interest is actually more limited than those records indicate. When the active UCC records indicate that the information a creditor must supply to satisfy 84–9–402(1) can be obtained through a search of other current public records that are required by statute or regulation to be retained and made available for public searching, the Court will also concede a search of those other public records must be made. Such records will be maintained in a form searchable by either the public or the custodian of the records. The Court will not, however, accept the view that a reasonable, diligent searcher must not only perform a normal search of the active public records, but if those records indicate an expired record might contain the required information, ask the Secretary of State or custodian of

other public records whether, although the law authorizes him or her to destroy them, that official has retained a private cache of expired records that can be searched for a record that is no longer effective in its own right. Such a discretionary cache is simply not a system of records that should have to be searched under the UCC. Presumably, the Bank had a copy of its old financing statement when it filed the new one, and could have avoided this problem either by copying the old collateral description onto the new statement or by attaching a photocopy of the old statement to the new one.

For these reasons, the Court concludes that the debtors' objection to the allegedly secured status of the Bank's claim must be sustained. First, the Bank has not shown that it has a valid lien on any of the debtors' property. Second, any lien the Bank does have is not perfected, and is therefore avoidable under 11 U.S.C.A. § 544(a)(1) or (2).

The foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by FRBP 9021 and FRCP 58.