IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 11, 2004 Session

## CHATTANOOGA AGRICULTURAL ASSOCIATION v. WILLIAM F. SAPP, JOY G. SAPP, TRI-COUNTY EQUIPMENT, INC., DEERE AND COMPANY, GARY SEALS, d/b/a GARY SEALS LIVESTOCK AND CITIZENS TRI-COUNTY BANK

**Direct Appeal from the Chancery Court for Bledsoe County
No. 2671      Hon. Jeffrey Franklin Stewart, Chancellor**

---

**No. E-2003-01984-COA-R3-CV  - FILED JUNE 25, 2004**

---

The Trial Court held defendant's purchase money security interest in cattle had priority over plaintiffs' prior security interest.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and WILLIAM H. INMAN, SR.J., joined.

Jerrold D. Farinash, and Shannon Guinade Scearce, Chattanooga, Tennessee, for Appellant.

L. Thomas Austin and Jennifer Austin Mitchell, Dunlap, Tennessee, for Appellees.

## OPINION

This action has devolved into whether defendant Citizen's Tri-County Bank's security interest had priority over plaintiff's security interest in cattle.

In the original action, plaintiff sued defendants, William and Joy Sapp and Tri-County Equipment, Inc., alleging that the Sapps had a loan with plaintiff which was in default, and that plaintiff had a security interest in the Sapp's farm equipment.

The Sapps filed an Answer, denying that they were past due on the note, and averring

that any transfers of the secured property were made with plaintiff's consent. At trial, the Court found that plaintiff had a security agreement which was filed in the Register's Office, and listed the secured property, including cattle and farm equipment. The Court found that the first three items (tractor, loader, and hay baler) had been traded to Tri-County, but reserved any further action on those items at plaintiff's request. The Court further held that plaintiff was entitled to immediate possession of all other items of collateral, and gave plaintiff judgment against the Sapps for the amount due under the note, less a credit of $1,780.00.

Subsequently, plaintiff moved to amend, seeking to add Gary Seals d/b/a Gary Seals Livestock and Citizens Tri-County Bank ("Citizens") as defendants. Plaintiff's Amended Complaint, alleged that Seals sold the Sapps 50 head of cattle on March 14, 1999 (some months after plaintiff's loan to the Sapps) and that Citizens loaned the Sapps the money to pay for said cattle. A promissory note was executed between Sapp and Citizens, and co-signed by Seals, and a financing statement was filed in the Register's Office, attempting to perfect a security interest in the cattle, but the statement did not describe the collateral covered by it. Sapp apparently defaulted on the note to Citizens, and Seals regained possession of the cattle and sold them, using the proceeds from that sale to pay on the promissory note. Plaintiff claimed to have a perfected security interest in the cattle pursuant to its security agreement, which covered after acquired property. Plaintiff sought judgment against Seals and Citizens for the proceeds of the sale of the cattle. Seals and Citizens answered, admitting that the cattle were sold, but averring that Citizens had a perfected purchase money security interest in the cattle, which had priority.

At the trial, Greg Johnson, a loan officer and vice president at Citizens, testified that the Sapps came to the bank and asked about borrowing money to buy cattle, but based upon Sapp's credit, the bank would not loan them money without a co-signer. Johnson testified that both Seals and Sapp signed the promissory note for the loan.

Johnson testified that Sapp executed a security agreement, which describes the collateral as "29 head of cattle and 29 calves to be located on the Buddy Kelly farm" and states that it will include their natural increase. Johnson said that Sapp also signed a financing agreement, and it was sent to the Register's Office in Bledsoe County. Johnson testified that the bank also sent a copy to be stamped and sent back to the bank, and that this copy was received back from the Register's Office. Johnson testified that the document represented a true copy of what was sent to the Register's Office, which was the UCC-1 and its exhibit which describes the collateral. He further testified that the copy was placed in Sapp's file, and had never been removed/changed.

Johnson testified that the bank then issued a check to Seals for the purchase of the cattle, and that this loan was paid off when Seals brought checks from Plateau Auction, as well as his own personal check for the remaining balance.

At the time the loan was made, Johnson testified that the bank did not do a UCC search, because it was a purchase money transaction, but they were aware that when Citizens made the loan that the plaintiff had a loan outstanding with Sapp, as well, because Sapp had informed

them.

Following trial, the Court found that Citizens had a perfected purchase money security agreement and that the Amended Complaint against Seals and Citizens should be dismissed. The Court said in its Memorandum Opinion, that Citizens had filed its Financing Statement and an Exhibit detailing the collateral covered, and that Citizens had received a stamped copy of these documents back from the Register's Office, but somehow the Exhibit was never recorded in the Register's records. The Court found that any mistake in the recording of the security interest was not the fault of Citizens, and therefore Citizen's interest had been perfected. The Court also noted that plaintiff contacted Citizens at some point indicating that they had searched in the Register's Office and found the record that Citizens claimed an interest in some property belonging to Sapp, and thus any requirements regarding notice were met.

On appeal, plaintiff insists the Trial Court erred in finding that Citizens had a perfected purchase money security interest in the cattle which took priority over plaintiff's prior security interest.

Both parties agree that pursuant to Tenn. Code Ann. §47-9-312(4), a purchase money security interest in collateral of this type has priority over a conflicting security interest, so long as the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter.

Pursuant to Tenn. Code Ann. §47-9-303, a security interest is perfected when it has attached and when all the applicable steps for perfection have been taken according to the statute. Attachment occurs when the debtor signs the security agreement, value is given, and the debtor obtains rights in the collateral. In this case, attachment occurred prior to the filing, as Sapp had executed the security agreement, received the money to purchase the cattle, and obtained possession. *See* Tenn. Code Ann. §47-9-203.

The only other step for perfection which must be completed for collateral is for the financing statement to be filed in the Register's Office of the appropriate county. Tenn. Code Ann.§47-9-302 and §47-9-401. In this case, the financing statement sent to the Register's Office met the requisites of Tenn. §47-9-402(1).

Regarding what constitutes proper "filing", Tenn. Code Ann. §47-9-403 states:

Presentation for filing of a financing statement containing the name and address of the debtor and tender of the filing fee (unless the filing officer properly refuses to accept the statement because of a failure to pay any tax imposed on the filing by § 67-4-409(b), based on the representation of indebtedness required thereunder), or acceptance of the statement by the filing officer, constitutes filing.

The undisputed proof shows Johnson on behalf of Citizens presented an appropriate and proper financing statement with attachment to the Register's Office along with the filing fee, and it was accepted by the filing officer, and stamped copies of the UCC-1 and attachment were returned by the filing officer and placed in Sapp's file at the bank. The evidence establishes that the purchase money security interest was properly filed, and thus perfected, pursuant to the statute.

Plaintiff relies upon cases from other jurisdictions where similar issues have been addressed and decided differently. In these cases, however, there was no proof presented to the court that the missing attachment was actually filed or presented for filing by the secured party. *See In re Antekeier*, 1969 WL 11086 (Bankr. W.D. Mich. 1969)(Secretary of State's Office stated that no attachment was filed, and the filing officer noted this on the receipt - copy sent back to secured party also did not contain attachment); *First Nat'l Bank of St. Charles v. Chemical Products, Inc.*, 637 S.W.2d 373 (Mo. Ct. App. 1982)(court stated that attachment was not filed with financing statement - apparently no proof presented that it had been attached at time of filing); *In re Bailey*, 228 B.R. 267 (Bankr. D. Kan. 1998)(secured party could not even produce referenced attachment, and the court found that it had not been filed).

In this case, Johnson testified that the attachment was filed with the UCC-1, and his testimony was bolstered by the fact that the copies which were accepted, stamped, and returned by the Register's Office had the necessary attachments describing the collateral. The Court obviously credited Johnson's testimony, and there was no proof to the contrary, except that the UCC-1 on file at the Register's Office inexplicably had no attachment. There was no proof, as in *Antekeier*, that the Register's Office did not receive the attachment at the time of filing.

In this case, the evidence does not preponderate against the Trial Court's finding that Citizens properly filed a complete financing statement which met all of the statutory requirements, and that the purchase money security interest had been perfected. Tenn. R. App. P. 13(d).

This issue is addressed in general by the official comments to the statutory section dealing with the filing officer's duties, wherein it is stated:

> Subsection (1) requires the filing officer upon request to return to the secured party a copy of the financing statement on which the material data concerning the filing are noted. Receipt of such a copy will assure the secured party that the mechanics of filing have been complied with. Note, however, that under Section 9-403(1) the secured party does not bear the risk that the filing officer will not properly perform his duties: under that section the secured party has complied with the filing requirements when he presents his financing statement for filing and the filing fee has been tendered or the statement accepted by the filing officer.

Tenn. Code Ann. §47-9-407, Comments to Official Text (note 1).

Similarly, in the case of *In re Williams*, 112 B.R. 913 (Bankr. E.D. Tenn. 1990), the court was faced with the question of whether an improperly indexed financing statement would still be considered perfected, since the secured party included an extra name on same, and this is the name it was indexed under. The court held that:

> A failure on the part of the filing officer to index an otherwise properly executed and filed financing statement is a mistake by the filing officer, not the secured creditor. When the filing officer makes the mistake in indexing a financing statement, the secured creditor, who has filed the financing statement that substantially complies with the statutory requirements and that is not seriously misleading, is not penalized.

*Id.* at 915.

The Court based its conclusion on the express language of the statute, relying on Tenn. Code Ann. §47-9-403 regarding what constitutes proper filing, and which also requires the filing officer to properly mark the document, hold it for public inspection, and index it according to the name of the debtor. The Court also relied upon the note referenced above in the comments to Tenn. Code Ann. §47-9-407. *Id.*

Our conclusion upholds the intent of the drafters that wanted to adopt a system of "notice filing" such that all that is required is a "simple notice" sufficient to indicate that a security interest exists. Tenn. Code Ann. §47-9-402, Comments to Official Text (note 2). These comments also state that "Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs." *Id.* This intent is further evidenced by the language of the statute which expressly states that a financing statement which substantially complies with the statutory requirements is effective even if it contains "minor errors which are not seriously misleading." Tenn. Code Ann. §47-9-402 (8).

Based on the statutory provisions and the undisputed facts, the Trial Court properly found that Citizens had a perfected purchase money security interest in the cattle which took priority over plaintiff's conflicting security interest. Accordingly, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Chattanooga Agricultural Association.

_____
HERSCHEL PICKENS FRANKS, P.J.